U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Oct 15 - 2021**

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BRIGID "BRIDIE" FARRELL,**

                                                            **Plaintiff,**

                    **v.**                                                          **1:20-CV-1178**
                                                                                      **(FJS/CFH)**
**THE UNITED STATES OLYMPIC &**
**PARALYMPIC COMMITTEE,** *a Business*
*Entity of Form Unknown***; US SPEEDSKATING,**
*a Business Entity of Form Unknown***; THE**
**UNITED STATES OLYMPIC EDUCATION**
**CENTER,** *a Business Entity of Form Unknown***;**
**THE SARATOGA WINTER CLUB,** *a Business*
*Entity of Form Unknown***; and ANDREW ("ANDY")**
**GABEL,** *an individual***,**


                                                            **Defendants.**

_____

**APPEARANCES**                                        **OF COUNSEL**

**BARNES & THORNBURG LLP**                    **CHARLES G. LA BELLA, ESQ.**
1717 Pennsylvania Avenue NW               **JAMES F. MURDICA, ESQ.**
Suite 500                                               **MICHAEL A. BATTLE, ESQ.**
Washington, D.C. 20006                         **MICHELLE BRADFORD, ESQ.**
          -and-
655 West Broadway
Suite 1300
San Diego, California 92101
          -and-
43 West 43rd Street
Suite 175
New York, New York 10036
Attorneys for Plaintiff

**COVINGTON & BURLING LLP**                   **MITCHELL A. KAMIN, ESQ.**
1999 Avenue of the Stars                       **CAROLYN KUBOTA, ESQ.**
Suite 3500                                             **MARK YUN CHEN, ESQ.**
Los Angeles, California 90067
Attorneys for Defendant United States
Olympic & Paralympic Committee

**COFFEY LAW PLLC**                          **DANIEL W. COFFEY, ESQ.**
17 Elk Street
Albany, New York 12207
Attorneys for Defendant US Speedskating

**LAW OFFICES OF HOWARD L. JACOBS**          **HOWARD L. JACOBS, ESQ.**
31111 Agoura Road
Suite 225
Westlake Village, California 91361
Attorneys for Defendant US Speedskating

**HINCKLEY, ALLEN & SNYDER LLP**             **MICHAEL L. KOENIG, ESQ.**
30 South Pearl Street                        **CHRISTOPHER V. FENLON, ESQ.**
Suite 901
Albany, New York 12207
Attorneys for Defendant United States
Olympic Education Center

**MILLER, CANFIELD, PADDOCK AND**            **MATTHEW P. ALLEN, ESQ.**
**STONE, P.L.C.**
740 West Long Lake Road
Suite 150
Troy, Michigan 48098
Attorneys for Defendant United States
Olympic Education Center

**MANNING GROSS + MASSENBURG LLP**           **AUSTIN D. O'MALLEY, ESQ.**
14 Wall Street
28th Floor
New York, New York 10005
Attorneys for Defendant Saratoga
Winter Club

**AIDALA, BERTUNA & KAMINS, P.C.**           **IMRAN H. ANSARI, ESQ.**
546 5th Avenue
6th Floor
New York, New York 10036
Attorneys for Defendant Andrew Gabel

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. BACKGROUND

Plaintiff, a former Olympic speedskater, commenced this action against Defendants for negligence, assault and battery, negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional distress ("IIED") pursuant to New York's Child Victims Act ("CVA"), N.Y. C.P.L.R. § 214-g. *See* Dkt. No. 2 at ¶¶ 90-117. The CVA revived childhood sexual abuse victims' civil claims, which otherwise would have been barred by statutes of limitations, for one year, from 2019 to 2020. *See* N.Y. C.P.L.R. § 214-g. Plaintiff alleges that her teammate and mentor, Defendant Andrew Gabel, sexually abused her when she was 15 years old, over a period of seven months when she was training for the 1998 Winter Olympics. *See* Dkt. No. 2 at ¶¶ 1, 6, 37, 56-58.

Plaintiff asserts that Defendant Gabel, then a 33-year-old internationally known speedskater and Olympian, began grooming her by devoting attention to her, offering her assistance, confiding in her, giving her gifts, endearing himself to her parents, and driving her to and from speedskating training and practice sessions at least three days per week. *See id.* at ¶¶ 36, 42-45, 51. Plaintiff alleges that Defendant Gabel eventually sexually abused her; and Plaintiff claims that those abusive acts were inappropriate, new, unknown, confusing, suffocating, and sometimes painful; and she dreaded when Defendant Gabel would transport her because "she never knew if he was taking her to skate or to his home to molest her." *See id.* at ¶¶ 46, 49-50, 57. Plaintiff further contends that Defendant Gabel's control over her ultimately extended beyond sexual abuse to include emotional abuse. *See id.* at ¶¶ 53-59. As a result of this emotional abuse, Plaintiff claims that she developed severe depression and regular suicidal

thoughts, fear, anxiety, feelings of guilt, and multiple eating disorders, including anorexia and bulimia. *See id.* at ¶¶ 55, 60.

According to Plaintiff, much of her sexual abuse occurred at various Olympic training centers, including at Defendant Saratoga Winter Club in Saratoga Springs, New York, and at Defendant United States Olympic Education Center ("USOEC") in Marquette, Michigan, as well at Art Devlin's Olympic Motor Inn, located in Lake Placid, New York, and in Defendant Gabel's home and vehicle, and other secluded locations. *See id.* at ¶¶ 1, 6, 19, 46-47, 49, 57, 59. Plaintiff claims that, in addition to Defendants Saratoga Winter Club and USOEC, Defendant U.S. Speedskating ("USS") and Defendant United States Olympic & Paralympic Committee ("USOPC") were entrusted with her safety and wellbeing throughout that time; and, even though they knew or should have known that Defendant Gabel had previously sexually abused young female speedskaters, Plaintiff asserts that they failed to protect her and "turned a blind eye to [Defendant Gabel's] predatory behavior[.]" *See id.* at ¶¶ 1-3, 39, 52, 62, 65-78, 89.

In her complaint, Plaintiff alleges that Defendant Gabel had a patterned, systematic way of grooming underage female speedskaters whom he targeted for abuse, including befriending the young females' parents and demonstrating a disproportionate interest in their athletic abilities. *See id.* at ¶ 63. According to Plaintiff, Defendant Gabel would then offer to hone the skaters' techniques, take them for rides in his car, and offer himself as a mentor for their athletic career development. *See id.* Plaintiff contends that Defendant Gabel bragged about his sexual conquests in locker rooms, at practices, and at skating events. *See id.* She further alleges that it was well known within the speedskating community that he was attracted to younger females and that he had nicknames such as "Grandpa Gabes" and "Dirty Gabes." *See id.* at ¶¶ 52, 63.

Plaintiff asserts that, as early as 1989, Defendant USOPC learned that Defendant Gabel had coerced at least two young females into having sexual relations with him. *See id.* at ¶ 66.

Following Plaintiff's commencement of this action in New York State Supreme Court, *see generally* Dkt. No. 2, Defendant USOPC removed this action to federal court pursuant to 36 U.S.C. § 220505(b)(9), *see* Dkt. No. 1. That provision provides that USOPC, as a national organization, shall remove civil suits against it brought in state-court to the district court of the United States in the district in which the action was brought and that the district court shall have original jurisdiction over the action. *See* 36 U.S.C. § 220505(b)(9).

Pending before the Court are three motions to dismiss. *See* Dkt. Nos. 37, 42, 43. Specifically, Defendant USS moves to dismiss the complaint against it pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and for failure to state a claim with respect to Plaintiff's NIED and IIED causes of action. *See* Dkt. No. 37. Defendant USOEC moves to dismiss the complaint pursuant to Rule 17, alleging that it is not a suable entity, as well as pursuant to Rules 12(b)(2) and 12(b)(6). *See* Dkt. No. 42. Finally, Defendant Gabel moves to dismiss the complaint against him, alleging that the CVA is unconstitutional because it violates his New York and federal due process rights. *See* Dkt. No. 43. Defendant Gabel also moves to dismiss Plaintiff's causes of action for NIED and IIED for failure to state a claim pursuant to Rule 12(b)(6). *See id.*[1]

Thus, the Court must consider whether to dismiss the following claims:

> (a) Plaintiff's first cause of action for negligence against Defendants USS and USOEC;

---

[1] Defendants Saratoga Winter Club and USOPC did not move to dismiss the complaint against them.

(b) Plaintiff's second cause of action for assault and battery against Defendant Gabel;[2]

(c) Plaintiff's third cause of action for NIED against Defendants USS, USOEC, and Gabel; and

(d) Plaintiff's fourth cause of action for IIED against Defendants USS, USOEC, and Gabel.

*See generally* Dkt. Nos. 37, 42, 43.

## II. DISCUSSION

### A. Defendant USS's motion to dismiss

#### 1. *Personal jurisdiction*

Defendant USS initially argues that the Court does not have personal jurisdiction over it; and, thus, it may not be haled into court in the Northern District of New York. *See* Dkt. No. 37-1, Def. USS's Memorandum in Support, at 9-13. Plaintiff responds that the Court can exercise both general and specific personal jurisdiction over Defendant USS, and such jurisdiction would comport with due process. *See* Dkt. No. 44, Pl's Memorandum in Response to Def. USS, at 12-24. As discussed below, the Court finds that it can exercise specific personal jurisdiction over Defendant USS and that such jurisdiction does not violate the Due Process Clause.

#### a. *General jurisdiction*

"General personal jurisdiction exists if a defendant's contacts with a forum state are so extensive that the forum is empowered to hear any case regarding that defendant, even if the case is unrelated to those contacts." *Zimmerman v. Cornell Outdoor Educ.*, No. 3:20-CV-892

---

[2] Notably, Defendant Gabel did not move to dismiss Plaintiff's second cause of action against him for assault and battery pursuant to Rule 12(b)(6). *See* Dkt. No. 43. He only moves to dismiss this claim as time-barred based on his assertion that the CVA is unconstitutional. *See id.*

(DNH), 2021 U.S. Dist. LEXIS 3319, *5-*6 (N.D.N.Y. Jan. 8, 2021) (Hurd, J) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  Specifically, under C.P.L.R. § 301, a corporation must have "'engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted.'" *Car-Freshner Corp. v. Scented Promotions, LLC*, 5:19-CV-1158 (GTS/ATB), 2021 U.S. Dist. LEXIS 51975, *15 (N.D.N.Y. Mar. 19, 2021) (Suddaby, C.J.) (quotation omitted).  Notably, "'[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Zimmerman*, 2021 U.S. Dist. LEXIS 3319, at *8-*9 (quoting *Sonera* [*Holding B.V. v. Cukurova Holding A.S.]*, 750 F.3d [221,] 225 [(2d Cir. 2014)] (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014))).  "Aside from 'an exceptional case,' a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business."  *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir., 2018) (summary order) (quoting [*Daimler AG v. Bauman*, 571 U.S. 117,] 139 n.19 [(2014)]).  When determining whether a corporation's contacts in the state constitute an "exceptional case" for general jurisdiction purposes, the Court "must assess the company's local activity not in isolation, but *in the context of the company's overall activity*: the general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state contacts,' but 'calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.'"  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (quoting *Daimler*, 134 S. Ct. at 762 n.20 (alternations and internal quotation marks omitted)).

In this case, Plaintiff alleges that Defendant USS is a nonprofit organization with its national headquarters in Salt Lake City, Utah, and offices located in Kearns, Utah.  *See* Dkt. No.

2 at ¶ 14.  Ted Morris, the Executive Director for Defendant USS, confirmed this and further

attested that Defendant USS is incorporated pursuant to the laws of the State of Missouri.  *See*

Dkt. No. 37-2, Morris Aff., at ¶ 3.  Ordinarily, this would preclude the Court from exercising

general jurisdiction over Defendant USS.  Nonetheless, Plaintiff argues that this is an

"exceptional case" in which the Court should exercise general jurisdiction over Defendant USS

because it has "substantial" operations in New York and markets and solicits business here.  *See*

Dkt. No. 44 at 12-16.

    In her complaint, Plaintiff alleges that Defendant USS is a nonprofit organization that is

a member of both Defendant USOPC and the International Skating Union and is the nationally

recognized governing body for the sport of speedskating in the United States.  *See* Dkt. No. 2 at

¶¶ 14-15.  According to Plaintiff, Defendant USS is one of the premier speedskating

organizations in the world, having won eighty-eight medals at Olympic Winter Games.  *See id.*

at ¶ 16.  Pointing to Defendant USS's website, Plaintiff asserts that Defendant USS is

responsible for the "grassroots development of speedskating" and supports "athlete development

camps along with coaching and officials' training across the country."  *See id.*  Mr. Morris

further affirmed that Defendant USS did not have any offices in New York, although it had

registered clubs and members in nearly every state, nor did it have any employees, bank

accounts, or rented or leased space in this state.  *See* Dkt. No. 37-2 at ¶¶ 4-10.

    Based on these assertions, it appears that Defendant USS is a national nonprofit

organization with the goal of sponsoring top speedskating talent at the international Winter

Olympic Games.  Although Plaintiff supports her position with proof that Defendant USS

maintained dues-paying members and membership clubs and sponsored numerous events in

New York, *see* Dkt. No. 44-1, Exs. A-I, the Court is required to view Defendant USS's presence

in New York in comparison to its significant national and global presence.  Reviewing the facts alleged in the complaint and those that Mr. Morris affirmed, the Court finds that Defendant USS's local presence is not significant when compared with its overall activity such that it should fall within an exception to the rule that general jurisdiction applies to an organization's "home state."  Thus, for these reasons, the Court finds that it does not have general jurisdiction over Defendant USS.

### b.  *Specific jurisdiction*

Specific personal jurisdiction "'depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'"  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (quoting [*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846,] 2851 [(2011)] (internal quotation marks omitted)).  To establish specific personal jurisdiction under New York's long-arm statute, a plaintiff must demonstrate that the defendant, "in person or through an agent . . . (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . . "  N.Y. C.P.L.R. § 302(a)(1)-(2).  The Second Circuit has stated that the phrase "through an agent," as used in § 302(a)(1), has the traditional common-law meaning of agency.  *See Mayes v. Leipziger*, 674 F.2d 178, 180 (2d Cir. 1982).  Traditionally, agency has been defined as "the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006).

- 9 -

With respect to the Court's jurisdiction over Defendant USS pursuant to C.P.L.R. § 302(a)(2), the parties appear to dispute whether Defendant Gabel was Defendant USS's agent for purposes of specific jurisdiction when the alleged tortious acts occurred. *See* Dkt. No. 37-1 at 11-12; Dkt. No. 44 at 19. Defendant USS, through Mr. Morris, maintained that it never employed Defendant Gabel nor entered into any written contracts with him. *See* Dkt. No. 37-2 at ¶¶ 12-13. Mr. Morris further attested that, to the best of his knowledge, Defendant Gabel was not employed by nor acting on behalf of Defendant USS in 1997 when the abuse occurred. *See id.* at ¶¶ 17-18.

In her complaint, Plaintiff alleges that Defendant USS had a duty to ensure that its training centers and member clubs adequately protected and supervised minors training and competing at the facility. *See* Dkt. No. 2 at ¶ 18. Despite this duty, Plaintiff asserts that Defendant Gabel sexually abused young girls at Defendant USS's training facilities. *See id.* Plaintiff additionally alleges that Defendant Gabel periodically acted in an official capacity for Defendant USS, including as an athlete and assistant in 1989, athlete representative for Defendant USS's Board of Directors in 1994, Vice President for Defendant USS in 1999, and as Defendant USS's President in 2002. *See id.* at ¶ 23. Plaintiff claims that Defendant USS compensated Defendant Gabel for his services. *See id.* at ¶ 25. Plaintiff further alleges that Defendant USS knew about prior allegations against Defendant Gabel, claiming that he groomed and entered into illegal sexual relationships with young speedskaters, but Defendant USS promoted him anyway. *See id.* at ¶¶ 39, 52, 65, 70-71. Plaintiff also claims that all of Defendant Gabel's victims trained with Defendant USS's member organizations. *See id.* at ¶ 64. Plaintiff alleges that Defendant Gabel sexually abused her in 1997, when they were preparing

for the 1998 Olympic Trials in Saratoga Springs and when he was acting in an official capacity for Defendant USS. *See id.* at ¶¶ 23, 37-38.

To further support her position that Defendant Gabel was an agent for Defendant USS, Plaintiff points to the "Ice Chips" newsletter that Defendant USS issued on April 29, 1997. *See* Dkt. No. 44-1, Ex. J, at 65. In that newsletter, skaters were informed that they could reach out to their athlete representative for assistance; and it listed Defendant Gabel's name and two phone numbers to reach him. *See id.* Defendant USS's newsletter also listed Defendant Gabel as a 1998 Level 1 athlete in short track and member of the 1997-1998 national team, the 1997 world team, the 1997 traveling team, and as part of the Elite Training Group. *See id.* at 69-71. The newsletter also included several articles about Defendant Gabel's competition at the world short track speedskating championships. *See id.* at 71-73.

The Court finds that, at this time, these alleged facts are sufficient to show that Defendants USS and Gabel had an agency relationship such that Defendant Gabel's alleged tortious conduct in New York would bring Defendant USS within the Court's jurisdiction.[3] Nonetheless, based on the intertwined connection between Defendant Gabel and Defendant USS, for which he was acting as an athlete and representative in 1997 when the alleged abuse took place, the Court concludes that New York's long-arm statute gives the Court specific personal jurisdiction over Defendant USS.

### c. *Due process*

"After determining that personal jurisdiction is appropriate under the long-arm statute, the Court must also consider whether the exercise of that jurisdiction would comport with due

---

[3] This finding does not preclude Defendant USS from proffering additional evidence at the summary judgment stage to disprove the parties' agency relationship.

process." *Car-Freshner Corp.*, 2021 U.S. Dist. LEXIS 51975, at *18.  "This analysis has two

related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v.*

*Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  "With respect to minimum

contacts, [the court] must determine whether the defendant has sufficient contacts with the

forum state to justify the court's exercise of personal jurisdiction." *Id.* (citation omitted).  "With

respect to [the court's] analysis of reasonableness as part of the due process inquiry, [the court]

ask[s] whether the assertion of personal jurisdiction comports with 'traditional notions of fair

play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction

under the circumstances of the particular case." *Id.* (citation omitted).  "In determining whether

an exercise of personal jurisdiction is reasonable, the Court must consider the following factors:

'(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of

the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and

effective relief; (4) the interstate judicial system's interest in obtaining the most efficient

resolution of the controversy; and (5) the shared interest of the states in furthering substantive

social policies.'" *Car-Freshner Corp.*, 2021 U.S. Dist. LEXIS 51975, at *19-*20 (quoting

[*Chloe*, 616 F.3d] at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102,

113-14, 107 S. Ct. 1026, 94 L. Ed. 2d 92 [1987])).

    As discussed in the context of general jurisdiction, Plaintiff has alleged in her complaint

that Defendant USS received dues from member clubs and athletes in New York; and it

sponsored numerous events annually in this state.  *See* Dkt. No. 44-1, Exs. A-I.  Although these

contacts were not sufficient to prove that New York is Defendant USS's "home state" for

general jurisdiction, the Court finds that these contacts are sufficient to justify the Court's

exercise of specific personal jurisdiction over Defendant USS and comport with the Due Process Clause.

Regarding whether it is reasonable for the Court to exercise personal jurisdiction over it, Defendant USS has not argued that there will be any significant burden on it to defend this case in New York.  Furthermore, the forum state has an interest in this case being adjudicated here, as the New York Legislature passed the CVA to provide an opportunity for child victims of sexual abuse to seek justice when they otherwise could not because their claims were time-barred.  *See* Practice Commentary, N.Y. C.P.L.R. § 214-g; *Caldwell v. City of New York*, No. 21-CV-6560 (LTS), 2021 U.S. Dist. LEXIS 165115, *5 n.2 (S.D.N.Y. Aug. 27, 2021).  Plaintiff also has an interest in obtaining relief in New York because that is where both she and the alleged perpetrator lived when the abuse occurred and where she continues to live.  *See* Dkt. No. 2 at ¶¶ 30-31.  There is only a one-year lookback period in relation to the CVA, and so litigating this matter in New York would also be the most efficient location.  *See* Dkt. No. 2 at ¶ 5; N.Y. C.P.L.R. § 214-g.  Finally, the states have a shared interest to ensure that child victims can obtain relief for abuses that they suffered as children that they could not prosecute previously.  *See* Dkt. No. 2 at ¶ 5; N.Y. C.P.L.R. § 214-g.  For these reasons, the Court finds that it would be reasonable and comport with traditional notions of fair play and substantial justice for the Court to exercise personal jurisdiction over Defendant USS.  Accordingly, the Court denies Defendant USS's motion to dismiss the complaint against it pursuant to Federal Rule of Civil Procedure 12(b)(2).

### 2.   *Failure to state a claim*

Defendant USS argues that Plaintiff's NIED and negligence claims are duplicitous.  *See* Dkt. No. 37-1 at 14.  In New York, a cause of action is not duplicative of another if the elements are

different.  *See Estate of D.B. v. Thousand Islands Cent. Sch. Dist.*, 169 F. Supp. 3d 320, 338 (N.D.N.Y. 2016).  "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).  These elements are different than those required to prove negligence.  "Under New York law, '[i]n order to set forth a prima facie case of negligence, the plaintiff's evidence must establish (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) that such breach was a substantial cause of the resulting injury.'"  *Birch v. White Way Laundry, Inc.*, No. 1:19-cv-1560 (GLS/DJS), 2021 U.S. Dist. LEXIS 179432, *6 (N.D.N.Y. Sept. 21, 2021) (Sharpe, J.) (quoting *In re Lake George Tort Claims*, 461 F. App'x 39, 40 (2d Cir. 2012) [(summary order)] (quoting *Merino v. N.Y.C. Transit Auth.*, 218 A.D.2d 451, 457, 639 N.Y.S.2d 784 (3d Dep't 1996)))[4]

With respect to her negligence claim against Defendant USS, Plaintiff alleges in her complaint that it had a duty to take reasonable steps to protect her from foreseeable harm and to prevent Defendant Gabel from using his position as an "athlete representative" to target, groom, and sexually abuse young girls, including her.  *See* Dkt. No. 2 at ¶¶ 91-93.  Plaintiff contends that Defendant USS breached its duties by giving Defendant Gabel access to children, failing to train volunteers about how to remain alert to the signs of sexual predation, failing to protect children from sexual abuse, failing to warn her, her parents, or other parents of the danger of sexual abuse, and failing to create a safe and secure environment for her and other young girls.

---

[4] Additionally, even if claims are duplicitous, plaintiffs are permitted to plead in the alternative. *See* Fed. R. Civ. P. 8(a)(3).

*See id.* at ¶ 98.  Plaintiff asserts that it was reasonably foreseeable that Defendant USS's breach of its duties would result in her sexual abuse while in Defendant USS's care; and, as a direct and proximate result of Defendant USS's acts and omissions, Defendant Gabel groomed and sexually abused her.  *See id.* at ¶¶ 99-101.

Regarding her claim for NIED, Plaintiff alleges that Defendant USS engaged in reckless conduct by providing Defendant Gabel with access to young girls, including her, despite knowing that he would likely use his position to groom and sexually abuse them.  *See id.* at ¶ 109.  Plaintiff claims that Defendant USS had a duty to take reasonable steps to protect her from foreseeable harm and that Defendant USS's reckless conduct resulted in harm and that Defendant USS knew or had reason to know that its reckless conduct would inflict severe emotional and psychological distress on her and that she suffered such distress.  *See id.* at ¶¶ 110-112.

Defendant USS also argues that Plaintiff did not plead her NIED and IIED claims with particularity so as to satisfy Federal Rule of Civil Procedure 9(b).  *See* Dkt. No. 37-1 at 14-15. Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Neither NIED nor IIED claims include "fraud or mistake" as an element; and, thus, Plaintiff is not required meet that heightened burden when pleading those claims.  In any event, Plaintiff's allegations are sufficiently particular to put Defendant USS on notice of what conduct she is alleging was tortious and caused her emotional distress.  Accordingly, because Plaintiff has alleged sufficient facts to support plausible claims of both negligence and NIED, and because the heightened

pleading standard does not apply, the Court denies Defendant USS's motion to dismiss

Plaintiff's third and fourth causes of action for failure to state a claim.

### B.  Defendant USOEC's motion to dismiss

Defendant USOEC contends that it is not a legal entity that may be sued.  To the

contrary, Plaintiff argues that Defendant USOEC is an unincorporated association that is suable

under New York's laws.  *See* Dkt. No. 42-1, Def. USOEC's Memorandum in Support, at 12;

Dkt. No. 46, Pl's Memorandum in Opposition to Def. USOEC's Mot., at 13-16.  Federal Rule of

Civil Procedure 17 dictates whether an entity may sue or be sued.  *See* Fed. R. Civ. P. 17(b).

Per that rule, an individual may be sued by the law of their domicile, and a corporation may be

sued "by the law under which it was organized."  Fed. R. Civ. P. 17(b)(1)-(2).  For all other

parties, however, the rule provides that they may be sued "by the law of the state where the

court is located, except that: (A) a partnership or other unincorporated association with no such

capacity under that state's law may sue or be sued in its common name to enforce a substantive

right existing under the United States Constitution or laws . . ."  Fed. R. Civ. P. 17(b)(3)(A).

The parties do not dispute that Plaintiff is not suing Defendant USOEC to enforce a substantive

constitutional right.

According to New York law, "[a]ny partnership, or other company of persons, which

has a president or treasurer, is deemed an [unincorporated] association" within the meaning of

General Associations Law § 13.  N.Y. Gen. Ass'ns L. § 13.  Specifically, two or more persons

must be associated to create such an unincorporated association.  *See id.*; N.Y. C.P.L.R. § 1025.

The General Associations Law further provides that "[a]n action . . . may be maintained against

the president or treasurer of [an unincorporated] association, to recover any property, or upon

any cause of action, for or upon which the plaintiff may maintain such an action . . . , against all

the associates, by reason of their interest or ownership . . . or their liability therefor, either

jointly or severally."  Gen. Ass'ns L. § 13; *see* N.Y. C.P.L.R. § 1025.

Plaintiff has not alleged in her complaint the type of entity that she believes applies to

Defendant USOEC.  She merely alleges that Defendant "USOEC operated a training and

education center facility located in Marquette, Michigan"; and, "[a]t all times relevant to [her]

complaint, [Defendant] USOEC was under the control and supervision of, and upon information

and belief, was funded through, [Defendant] USO[P]C and/or [Defendant] USS."  *See* Dkt. No.

2 at ¶ 11.  Plaintiff describes Defendant USOEC as both a location – as a facility in Michigan –

and as a program sponsored through Defendants USOPC and USS, but she does not identify it

as a corporation or unincorporated association in her complaint, nor does she identify any of its

employees or associates.

If the Court were to consider Defendant USOEC as an unincorporated association, based

on the language in Federal Rule 17(b)(3), Defendant USOEC may be sued based on the laws of

the state where the Court is located.  Furthermore, pursuant to New York law, such an

unincorporated association may be sued as long as the action is against the president, treasurer,

or the associates of the unincorporated association.  *See* Gen. Ass'ns L. § 13; N.Y. C.P.L.R.

§ 1025.  Thus, to maintain an action against Defendant USOEC in this Court, Plaintiff must

have alleged causes of action against those named individuals.  Notably, however, Plaintiff does

not identify Defendant USOEC's president, treasurer, or associates in her complaint.  She

allegedly served Mike Kaurala, listed on Northern Michigan University's website as the

"Operations Manager" and contact person for Defendant USOEC, *see* Dkt. No. 46 at 15 (citing

Dkt. No. 46-1, Ex. C, at 12-13); however, she has not named him in her complaint.

Additionally, Mr. Kaurala is the only individual whom Plaintiff has identified in relation to this

association; and one person cannot "associate" with himself.  Thus, the Court finds that Plaintiff has failed to show that Defendant USOEC is an unincorporated association that constitutes a suable entity; and, if it is such an entity, Plaintiff has not appropriately identified the individuals associated with Defendant USOEC in her complaint or named them in her caption.  Therefore, the Court grants Defendant USOEC's motion to dismiss the complaint against it pursuant to Federal Rule of Civil Procedure 17.

### C.  Defendant Gabel's motion to dismiss

#### 1.  Constitutionality of the CVA

Defendant Gabel argues that the CVA is unconstitutional because it does not pass New York's "stringent" test for extending statutes of limitations and violates his due process rights.  *See* Dkt. No. 43-1, Def. Gabel's Memorandum in Support, at 11-25.  According to Defendant Gabel, extending a statute of limitations has traditionally been an "extraordinary remedy" granted when the plaintiff could not have brought an action in a timely manner.  *See id.* at 12-13 (citing *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006)).

Plaintiff responds that the CVA's revival provision is constitutional and does not deprive Defendant Gabel of his right to due process.  *See* Dkt. No. 47, Pl's Memorandum in Opposition to Def. Gabel's Mot., at 11.  First, Plaintiff argues that the CVA passes New York's "reasonableness test" because the revival provision constitutes a reasonable response to remedy an injustice.  *See id.* at 12.  Plaintiff also asserts that Defendant Gabel's memorandum of law conflates this standard with the inappropriate "exceptional circumstances" standard.  *See id.* at 17-18.  Finally, Plaintiff challenges Defendant Gabel's reliance on *Zumpano*, noting that it predates the CVA's passage.  *See id.* at 16.

"[A] claim-revival statute will satisfy the Due Process Clause of the State Constitution if it was enacted as a reasonable response in order to remedy an injustice."  *Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 400 (2017).  Multiple New York courts and two federal district courts in the Second Circuit have held that the CVA does not run afoul of due process because it remedies an injustice.  *See, e.g.*, *PC-41 Doe v. Poly Prep Country Day Sch.*, No. 20-CV-03628 (DG) (SJB), 2021 U.S. Dist. LEXIS 181254, *7 (E.D.N.Y. Sept. 22, 2021) (collecting cases); *Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP), 2020 U.S. Dist. LEXIS 78596, *5-*6 (S.D.N.Y. Apr. 8, 2020); *PB-36 Doe v. Niagara Falls City Sch. Dist.*, No. E172556/2020, 2021 N.Y. Slip. Op. 21188, *6-*7 (N.Y. Sup. Ct., Niagara Cnty. July 19, 2021); *ARK3 Doe v. Diocese of Rockville Ctr.*, No. 900010/2019, 2020 N.Y. Misc. LEXIS 1964, *15 (N.Y. Sup. Ct., Nassau Cnty. May 11, 2020); *Torrey v. Portville Cent. Sch.*, No. 88476, 66 Misc. 3d 1225(A), 2020 N.Y. Slip. Op. 50244(U), *11 (Cattaraugus Cnty. Feb. 21, 2020).

In *PC-41 Doe*, a court in the Eastern District of New York concluded that "the CVA, which afforded victims of childhood sexual abuse a limited period of time within which to pursue their claims of sexual abuse through the judicial system, was a reasonable, non-arbitrary response to remedy an injustice and therefore satisfies the New York Due Process Clause."  *PC-41 Doe*, 2021 U.S. Dist. LEXIS 181254, at *7.  That court relied on the same sponsor's memorandum from the bill jacket on which Plaintiff relies, indicating that New York was "'one of the worst states in the nation for survivors of child sexual abuse,'" and, because of restrictive statutes of limitations, "'thousands of survivors [were] unable to sue or press charges against their abusers, who remain[ed] hidden from law enforcement and pose[d] a persistent threat to public safety.'"  *Id.* at *17 (quoting N.Y. State Assembly Mem. Supp. Legislation, reprinted in

Bill Jacket for 2019 S.B. 2440, Ch. 11, at 7 (Jan. 29, 2019)).  The purpose of the CVA was to

"'finally allow justice for past and future survivors of child sexual abuse . . . and shift the

significant and lasting costs of child sexual abuse to the responsible parties.'"  *Id.* at *18

(quoting [N.Y. State Assembly Mem. Supp. Legislation] at 8) (other citation omitted).

Accordingly, the court found that "[t]he CVA was enacted to remedy an injustice identified by

the Legislature that results from applying restrictive statutes of limitation to claims of childhood

sexual abuse."  *Id.* at *19 (citing N.Y. State Assembly Mem. Supp. Legislation, reprinted in Bill

Jacket for 2019 S.B. 2440, Ch. 11, at 7-8).

The court in *PC-41 Doe* rejected many of the same contentions that Defendant Gabel

makes in support of his motion to dismiss.  For example, the court specifically rejected the

argument that a claim-revival statute only comports with the New York Due Process Clause if

the covered plaintiffs had a total and practical inability to bring a timely claim.  *See id.* at *14.

The court further noted that the Court of Appeals had never set forth such a requirement, and it

did not do so *In the Matter of World Trade Ctr.*, as the defendant had argued.  *See id.* at *14-

*15.  The court also rejected the defendant's assertion that the *Zumpano* court's conclusion that

sexual abuse victims could have timely brought claims rendered the CVA unconstitutional,

noting that the *Zumpano* decision predated the CVA, did not address the constitutionality of a

revival statute, and it twice referenced the role the Legislature might play in the future in

redressing childhood sexual abuse.  *See id.* at *16-*17, *17 n.10.

Similarly, in *Giuffre*, the Southern District of New York found that "the CVA's claim-

revival provision obviously reflects the New York State Legislature's desire to correct a

perceived injustice, *i.e.*, that the statute of limitations for certain claims expired before child

victims of sexual abuse recovered from past traumas to a degree sufficient to assert their rights."

*Giuffre*, 2020 U.S. Dist. LEXIS 78596, at *6.  That court also concluded that the CVA does not violate the Due Process Clause of the Fifth Amendment, rejecting the defendant's claim that the CVA is unconstitutional because it is void for vagueness.  *See id.* at *7-*8.

Finally, courts have rejected due process arguments, like Defendant Gabel's, that defendants do not have information regarding prior reports of abuse, that witnesses may have died, and that memories may be impaired.  *See PB-36 Doe*, 2021 N.Y. Slip. Op. 21188, at *5. Courts have criticized such arguments for being speculative and unsupported by personal knowledge.  *See id.*  Accordingly, relying on the same reasons as those on which New York courts and the courts in *PC-41 Doe* and *Giuffre* relied, the Court finds that the CVA is a constitutional revival statute designed to remedy an injustice; and, consequently, it does not violate either the New York or federal Due Process Clauses.

### 2.  *Failure to state a claim*

Lastly, Defendant Gabel contends that the Court should dismiss Plaintiff's causes of action for NIED and IIED because she fails to state a claim.  *See* Dkt. No. 43-1 at 25-27.  As stated above, the elements to plead an NIED claim are a breach of duty, emotional harm, a causal connection between the breach and harm, and circumstances providing some guarantee of genuineness of the harm.  *See Francis*, 992 F.3d at 81.  "New York requires four elements to sustain a claim of [IIED]: (1) 'extreme and outrageous conduct'; (2) 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress'; (3) 'a causal connection between the [outrageous] conduct and injury'; and (4) 'severe emotional distress.'"  *Peck v. Cnty. of Onondaga*, No. 5:21-CV-651, 2021 U.S. Dist. LEXIS 157561, *46-*47 (N.D.N.Y. Aug. 19, 2021) (Hurd, J.) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (N.Y. 1993)).

Case 1:20-cv-01178-FJS-CFH   Document 56   Filed 10/15/21   Page 22 of 23


In her complaint, Plaintiff generally alleges that Defendant Gabel, an internationally known and ranked speedskater and Olympian, targeted her "to be a victim for his sexual depravities." *See* Dkt. No. 2 at ¶¶ 36, 38, 41-51. She asserts that Defendant Gabel was her "teammate and mentor" and was entrusted with her safety and wellbeing. *See id.* at ¶¶ 1, 41, 45. Plaintiff alleges that Defendant Gabel exploited that position to threaten, influence, and sexually abuse young girls, including her, and that his abuse was confusing, suffocating, painful, and led to her development of multiple eating disorders, severe depression, anxiety, and suicidal thoughts. *See id.* at ¶¶ 25, 49, 55, 59-60. After incorporating the above by reference in her NIED cause of action, Plaintiff further alleges that Defendants, including Defendant Gabel, acted recklessly, which resulted in Defendant Gabel's using his position and influence to gain access to and sexually abuse her. *See id.* at ¶¶ 108, 111. She also specifies that she has "in fact suffered and continues to suffer from severe emotional and psychological distress and personal physical injury, including mental anguish, humiliation, and emotional and physical distress," as a result of Defendants' reckless conduct. *See id.* at ¶ 112. Based on the foregoing, the Court finds that Plaintiff has sufficiently alleged her claim of NIED against Defendant Gabel; and, therefore, the Court denies his motion to dismiss that claim.

Additionally, in her cause of action for IIED, Plaintiff has repeated and realleged her allegations against Defendant Gabel; and she indicates that he used his position to groom and sexually abuse young girls and that his conduct was so "shocking and outrageous that it exceeds the reasonable bounds of decency, as measured by what the average member of the community would tolerate, and displays an utter disregard by [Defendants] of the consequences that would follow." *See id.* at ¶¶ 113, 115. Plaintiff also alleges that Defendant Gabel acted in such a way that he either knowingly caused her emotional harm or acted in such a way when he abused her

so as to disregard a substantial likelihood of emotional harm.  *See generally id.* at ¶¶ 53-59.

Plaintiff also specifically asserts, once again, that as a result of the sexual abuse, she suffered

severe emotional and physical distress.  *See id.* at ¶ 117.  Based on the foregoing, the Court

denies Defendant Gabel's motion to dismiss Plaintiff's IIED claim against him.


### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant USS's motion to dismiss the complaint against it, *see* Dkt. No.

37, is **DENIED**; and the Court further

**ORDERS** that Defendant USOEC's motion to dismiss the complaint against it, *see* Dkt.

No. 42, is **GRANTED**; and the Court further

**ORDERS** that Defendant Gabel's motion to dismiss the complaint against him, *see* Dkt.

No. 43, is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial

matters.

**IT IS SO ORDERED.**

Dated:  October 15, 2021
         Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge