UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BRIGID "BRIDIE" FARRELL,

                                    Plaintiff,

            v.                                                      1:20-CV-1178
                                                                    (FJS/PJE)
THE UNITED STATES OLYMPIC &
PARALYMPIC COMMITTEE, a Business
Entity of Form Unknown; US SPEEDSKATING,
a Business Entity of Form Unknown; THE
SARATOGA WINTER CLUB, a Business
Entity of Form Unknown; and ANDREW
"ANDY" GABEL, an individual,

                                    Defendants.

_____

APPEARANCES                                          OF COUNSEL

BARNES & THORNBURG LLP                               AMY E. TRYON, ESQ.
222 Delaware Avenue, Suite 1200                      CHARLES G. LA BELLA, ESQ.
Wilmington, Delaware 19801                           JAMES F. MURDICA, ESQ.
            -and-                                    JOSEPH G. EATON, ESQ.
655 West Broadway, Suite 1300                        MICHAEL A. BATTLE, ESQ.
San Diego, California 92101                          MICHELLE BRADFORD, ESQ.
            -and-
390 Madison Avenue, Suite 12th Floor
New York, New York 10017-2509
            -and-
11 South Meridian Street
Indianapolis, Indiana 46204
            -and-
555 12th Street, N.W., Suite 1200
Washington, D.C. 20006
Attorneys for Plaintiff

MOJDEHI GALVIN REGO LLP                              ANDREW J. GALVIN, ESQ.
2550 Fifth Avenue, Suite 910
San Diego, California 92103
Attorneys for Plaintiff

**COVINGTON & BURLING LLP**                    **LINDSEY C. BARNHART, ESQ.**
3000 El Camino Real                            **SARA J. DENNIS, ESQ.**
5 Palo Alto Square
Palo Alto, California 94306
        -and-
30 Hudson Yards
New York, New York 10001
Attorneys for Defendant The
United States Olympic &
Paralympic Committee

**LAW OFFICES OF HOWARD L. JACOBS**            **KATLIN FREEMAN, ESQ.**
31111 Agoura Road, Suite 225                   **HOWARD JACOBS, ESQ.**"
Westlake Village, California 91361
Attorneys for Defendant US Speedskating

**COFFEY LAW PLLC**                            **DANIEL W. COFFEY, ESQ.**
17 Elk Street
Albany, New York 12207
Attorneys for Defendant US Speedskating

**MCGIVNEY KLUGER CLARK &**                    **MEAGAN E. DEAN, ESQ.**
**INTOCCIA, P.C.**
100 Madison Street, Suite 1640
Syracuse, New York 13202
Attorneys for Defendant The
Saratoga Winter Club

**AIDALA BERTUNA & KAMINS PC**                 **IMRAN H. ANSARI, ESQ.**
546 Fifth Avene, Suite 6th Floor
New York, New York 10036
Attorneys for Defendant Andrew
"Andy" Gabel

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed her complaint in this action on July 30, 2020, *see* Dkt. No. 2, Complaint,

seeking compensatory damages and punitive damages pursuant to the Child Victims Act.  *See id.*

at ¶ 5 (citing 22 NYCRR 202.72) (other citation omitted).  Plaintiff alleges that Defendant Gabel

groomed and sexually abused her from June 1997 to January 1998. *See id.* at ¶ 6. As a result of that alleged abuse, Plaintiff asserts the following causes of action: (1) negligence against Defendants United States Olympic and Paralympic Committee ("USOPC"), U.S. Speedskating ("USS"), and The Saratoga Winter Club ("SWC"), *see id.* at ¶¶ 90-101; (2) assault and battery against Defendant Gabel, *see id.* at ¶¶ 102-107; (3) negligent infliction of emotional distress against all Defendants, *see id.* at ¶¶ 108-112; and (4) intentional infliction of emotional distress against all Defendants. *See id.* at ¶¶ 113-117.

Pending before the Court is Plaintiff's motion to exclude the expert testimony of Dr. Charles Saldanha pursuant to Rule 702 of the Federal Rules of Evidence. *See* Dkt. No. 244, Notice of Motion. Defendant USOPC opposes this motion. *See* Dkt. No. 307.

## II. DISCUSSION[1]

### A.     Plaintiff's position

Plaintiff contends that Dr. Saldanha's expert testimony is not admissible because he does not have experience treating patients who experienced sexual abuse as children. *See* Dkt. No. 244-2, Plaintiff's Memorandum of Law, at 5. Plaintiff argues that, "[a]lthough [Dr.] Saldanha holds several degrees and possesses work experience in forensic and adult psychiatry, . . . these qualifications do not automatically transfer to the unique specializations of child psychiatry or child sexual and mental abuse." *See id.* Plaintiff also asserts that "Dr. Saldanha admitted his *only* experience with adults alleging sexual and mental abuse suffered as adolescents derives exclusively from testifying in litigation, and not from any substantive clinical psychiatric

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing system generated and are located in the upper right corner of those pages.

experience." *See id.* at 5-6. Finally, Plaintiff argues that, "[e]ven if [Dr.] Saldanha's testimony passes the admissibility standard outlined by Rule 702, the probative value is outweighed by the prejudicial [e]ffect to Plaintiff under Fed. R. Evid. 403." *See id.* at 6. In this regard, Plaintiff contends that she "will be significantly prejudiced by the lure of [Dr.] Saldanha's degrees even though he does not have any relevant experience in child psychiatry or child sexual and mental abuse cases." *See id.*

Furthermore, Plaintiff asserts that Dr. Saldanha has only treated adults who suffered sexual abuse as children in the context of litigation. *See* Dkt. No. 244-2, Plaintiff's Memorandum of Law, at 7. Plaintiff contends that "[Dr.] Saldanha confirmed his only experience involving adults alleging sexual and mental abuse suffered as adolescents was connected specifically with th[is] case and a similar case of sexual abuse filed against USA Swimming . . . [which] involved five or six swimmers who were between the ages of twelve and eighteen when they were sexually abused by their coaches -- similar to [Plaintiff]" *See id.* at 7 (citing [Saldanha Dep.] at pp. 22-24; pp. 23:20-24, 24:1-6, 25:20-25). Plaintiff also notes that "[Dr.] Saldanha also worked on a case involving abuse at an adolescent residential treatment center." *See* Dkt. No. 244-2 at 8 (citing [Saldanha Dep.] at p. 122:9-17). Accordingly, Plaintiff contends that "Dr. Saldanha is not a qualified expert to testify on the matters of child psychiatry or child sexual abuse." *See id.* (citing Fed. R. Evid. 702).

Plaintiff also argues that, "[i]n cases involving the sexual abuse of a child where the case may turn on one party's word over another's word, courts find it critical for the expert to be educated and experienced with child sexual abuse victims and patients." *See* Dkt. No. 244-2, Plaintiff's Memorandum of Law, at 10 (citing *Eze v. Senkowski*, 321 F.3d 110, 128 (2d Cir. 2003)). Plaintiff contends that, "[a]lthough medical experts do not need to be specialized in the

'exact area of medicine implicated by the plaintiff's injury, [they] must have relevant experience and qualifications such that whatever opinion they will ultimately express would not be speculative.'" *See id.* (quoting *Loyd v. United States*, No. 08-CV-9016, 2011 WL 1327043, at *5, *7 (S.D.N.Y. Mar. 31, 2011) (holding that an internist and infectious disease specialist was not qualified to testify on neurological disorders)).

Furthermore, Plaintiff argues that, as Defendant USOPC has framed it, "[Dr.] Saldanha's role in this case . . . was essentially to blame all of [her] current psychiatric and emotional injuries, including post-traumatic stress disorder, on events and experiences in her life other than the sexual and emotional abuse by [Defendant] Gabel when she was a teenager." *See* Dkt. No. 244-2, Plaintiff's Memorandum of Law, at 12.

Plaintiff also contends that, "[i]n addition to being unqualified, [Dr.] Saldanha unequivocally 'developed [his] opinions expressly for the purposes of testifying.'" *See id.* at 15 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)). Plaintiff asserts that one factor "for assessing the reliability of expert testimony is whether the subject opinion was reached for the purposes of litigation or as a result of independent study." *See id.* (citing *Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010)). Furthermore, Plaintiff contends that "[c]ourts have excluded expert testimony after finding an offered witness is, in actuality, 'an advocate for a cause' who has 'depart[ed] from the ranks of an objective expert witness.'" *See id.* at 15-16 (quoting *Viterbo v. Dow Chem. Co.*, 646 F. Supp. 1420, 1425 (E.D. Tex. 1986), *aff'd*, 826 F.2d 420 (5th Cir. 1987)).

Finally, Plaintiff argues that, "[c]onsidering the limited scope of [Dr.] Saldanha's experience, skill, knowledge and education, [his] opinions that Plaintiff's emotional injuries were not caused by the repeated sexual abuse and emotional abuse by [Defendant] Gabel would

unfairly prejudice the Plaintiff in this case . . . [and] [t]he jury would be misled by what

[D]efendant labels 'expert' testimony[; and, therefore,] under Federal Rule of Evidence 403, the

Court should exclude that testimony and opinions." *See id.* at 17-18.


**B.      Defendant USOPC's response[2]**

Defendant USOPC argues that, "[u]nder Federal Rule of Evidence 702, 'qualifications to

render an expert opinion are liberally judged.'" *See* Dkt. No. 307, Defendant USOPC's

Memorandum of Law, at 3 (quoting *Sullivan v. Ford Motor Co.*, No. 97-CIV-059-RCC, 2000 WL

343777, at *4 (S.D.N.Y. Mar. 31, 2000) (finding expert qualified)) (other citations omitted).

Furthermore, Defendant USOPC asserts that "Dr. Saldanha's qualifications easily surpass this

required threshold." *See id.* at 4 (footnote omitted).  In addition, Defendant USOPC highlights

Dr. Saldanha's academic credentials and experience as a psychiatrist. *See id.* at 4-5.  Notably,

Defendant USOPC asserts that Dr. Saldanha is board qualified in forensic psychiatry, "the

medical specialty that involves 'identification of probable causes of mental illness in evaluating a

complex history.'" *See id.* at 4 (quoting *Sudtelgte v. Reno*, No. 90-1016-CV-W-6, 1994 WL 3406,

at *1 (W.D. Mo. Jan. 3, 1994)) (footnote omitted).

Defendant USOPC also explains that "Dr. Saldanha's education and experience render

him exceedingly qualified to provide the opinions detailed in his report[, which] describe (i) the

mental disorders that Plaintiff experiences and has experienced over her lifetime, (ii) the

prognosis and suggested treatment for those disorders, (iii) the causal factors contributing to the

---

[2] Defendants U.S. Speedskating ("USS") and Saratoga Winter Club ("SWC") join in Defendant
USOPC's opposition to Plaintiff's motion to exclude Dr. Saldanha's expert testimony.  *See* Dkt.
No. 308, Defendant SWC's Affidavit in Opposition; Dkt. No. 309, Defendant USS's Affidavit in
Opposition.

disorders, and (iv) any impairments that Plaintiff has experienced as a result of those disorders." *See id.* at 5 (citing ECF 244-5 at 1).

Furthermore, Defendant USOPC argues that, although Plaintiff criticizes Dr. Saldanha's lack of experience working with children, Dr. Saldanha examined Plaintiff when she was an adult. *See* Dkt. No. 307, Defendant USOPC's Memorandum of Law, at 6. Defendant USOPC explains that "Dr. Saldanha frequently treats adults who claim to have previously suffered sexual abuse. *See id.* (citing ECF 244-4 (Saldanha Dep. Tr.) at 94:21-95:8 (parenthetical omitted)) (footnote omitted). Moreover, Defendant USOPC asserts that, although experience in treating children is not a prerequisite to providing expert testimony in this case, Dr. Saldanha has such experience. *See id.* In particular, Defendant notes that "Dr. Saldanha . . . has significant experience treating children in adolescence, which is the period during which Plaintiff alleges that she was abused[, and] Dr. Saldanha has extensive specific experience treating adolescents who have suffered sexual abuse." *See id.*

Defendant USOPC also contends that, although Plaintiff alleges that Dr. Saldanha is merely acting as an "advocate for a cause," she fails to provide any support for this accusation. *See* Dkt. No. 307, Defendant USOPC's Memorandum of Law, at 9-10. In fact, Defendant USOPC asserts that, at his deposition, "Dr. Saldanha testified at length about his process as a forensic psychiatrist and his objective approach to the role, which includes developing an independent opinion rooted in 'evidence-based objective findings.'" *See id.* at 10 (quoting ECF 244-4 at 49:19-50:16). Furthermore, Defendant USOPC argues that, although Plaintiff asserts that Dr. Saldanha developed his opinion only for purposes of testifying, every medical expert does so. *See id.* Finally, Defendant USOPC contends that, although Plaintiff asserts that Dr. Saldanha did not exhibit the same intellectual rigor that characterizes an expert in the relevant

field, "[a] review of Dr. Saldanha's careful and detailed report, with multiple supporting appendices, makes clear that this assertion is false." *See id.* (citing ECF 244-5).

### C.     Plaintiff's reply

In response to Defendant USOPC's opposition to her motion to exclude Dr. Saldanha from testifying as an expert, Plaintiff argues that there is too great an analytical gap between her symptoms and Dr. Saldanha's conclusion that she is not suffering from PTSD, which merits exclusion of his testimony. *See* Dkt. No. 328, Plaintiff's Reply Memorandum of Law, at 10-11 (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Tardif v. City of New York*, 344 F. Supp. 3d 579, 600 (S.D.N.Y. 2018)). Plaintiff contends that "Dr. Saldanha's conclusion[] that the information available to him and in [Plaintiff's] medical record does not support [Plaintiff's] diagnosis of PTSD by both her treating psychiatrist Dr. Maloutas and psychiatry expert Dr. Ballas[] does not reflect a reliable application of the principles and methods to the facts of the case." *See id.* at 11 (citing ECF 244-5, Saldanha R. at 34). Plaintiff lists alleged inconsistencies between Dr. Salana's opinions and her conditions to support her argument. *See id.* at 11-12. Plaintiff also claims that her expert Dr. Ballas's assessment further contradicts Dr. Saldanha's conclusion. *See id.* at 12.

In addition, Plaintiff argues that "Dr. Saldanha's explanation of this conclusion in his report sheds no light on why he reached the contrary conclusions that he did, despite reviewing and acknowledging years of diagnoses notes from [Plaintiff's] treating physician Dr. Maloutas." *See id.* at 12-13. Moreover, Plaintiff asserts that "much of Dr. Saldanha's explanatory section of the report contradicts his own deposition testimony." *See id.* at 13. For example, Plaintiff points to the fact that "Dr. Saldanha state[d] in his report that certain of [Plaintiff's] symptoms are only

evidence of depressive disorder, and not PTSD, but then testified [at his] deposition that it is often difficult to disentangle symptoms of PTSD and symptoms of Major Depressive Disorder." *See id.* (citing ECF 244-5, Saldanha R. at 34; ECF 244-4, Saldanha Dep. Tr. at 74:16-20). Moreover, Plaintiff claims that Dr. Saldanha failed "to identify any 'objective source - a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like - to show that [he] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.'" *See id.* at 13 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*")).  Furthermore, Plaintiff contends that Dr. Saldanha's reliance on the findings of Dr. Alexis Smith, Defendant USOPC's consulting psychological expert witness, whom Defendant USOPC did not disclose as a testifying expert witness, is unacceptable because "one expert may not . . . merely adopt another expert's opinion as his or her own reflexively and without understanding the materials or methods underlying the other expert's opinions."  *See* Dkt. No. 328, Plaintiff's Reply Memorandum of Law, at 8-9 (quoting *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015)).

### D.    Analysis

"Trial courts serve as gatekeepers for expert evidence and are responsible for 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Goldstein v. Montefiore Med. Ctr.*, No. 22-CV-6723 (AT) (RFT), 2025 U.S. Dist. LEXIS 188931, *12 (S.D.N.Y. Sept. 25, 2025) (quoting *Daubert*, 509 U.S. at 597).  "'The party seeking to introduce the expert testimony bears the burden of establishing by a preponderance of the evidence that the proffered testimony is admissible.'"  *Id.* (quoting *Sec. & Exch. Comm'n v.*

*Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 503-04 (S.D.N.Y. 2018) (citing *Daubert*, 509 U.S. at 592)).  "Although a district court has 'broad discretion to carry out this gatekeeping function,' . . . 'exclusion remains the exception rather than the rule.'"  *Id.* (quoting *Navigators Ins. Co. v. Goyard, Inc.*, 608 F. Supp. 3d 44, 47 (S.D.N.Y. 2022); *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 250 (S.D.N.Y. 2022), *on reconsideration in part*, No. 16-CV-0740 (JMF), 2022 U.S. Dist. LEXIS 135303, 2022 WL 3018104 (S.D.N.Y. July 29, 2022)).

"Rule 702 requires that 'expert testimony rest on knowledge, a term that connotes more than subjective belief or unsupported speculation.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at \*13 (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) (quoting *Daubert*, 509 U.S. at 590)).  "In assessing the admissibility of expert testimony under Rule 702, courts consider three factors: '(1) the qualifications of the expert to testify as to a particular matter, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of the expert's testimony (*i.e.*, whether the expert's testimony as to a particular matter will assist the trier of fact).'"  *Id.* (quoting *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-CV-7636 (JPC) (BCM), 2022 U.S. Dist. LEXIS 56020, 2022 WL 902465, at \*6 (S.D.N.Y. Mar. 28, 2022) (quoting *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005))).

The Court will address each of these factors in turn.

### 1. Qualifications

"'To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at \*13 (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).  "'If an expert's training and experience are in a

field closely related to the subject matter of the proposed testimony, that showing may be sufficient to meet Rule 702's qualification standards in appropriate circumstances.'" *Id.* at *13-*14 (quoting *In re M/V Flaminia*, No. 12-CV-8892 (KBF), 2017 U.S. Dist. LEXIS 119146, 2017 WL 3208598, at *4 (S.D.N.Y. July 28, 2017)).

Plaintiff is an adult who alleges that she suffers from psychiatric conditions due to sexual abuse she suffered as a teenager.  She argues that Dr. Saldanha is not qualified as an expert "[d]ue to his lack of experience in child psychiatry."  *See* Dkt. No. 244-2, Plaintiff's Memorandum of Law, at 5.  Dr. Saldanha, however, has "superior knowledge, education, experience, or skill" in general and forensic psychiatry.  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *13 (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)); Dkt. No. 244-5, Saldanha Report, at 2.  Dr. Saldanha describes his work experience to "include clinical work with diverse behavioral health populations spanning a range of ages, primary diagnoses, comorbidities, and psychosocial backgrounds, including persons who have suffered sexual assault and abuse."  *See* Dkt. No. 244-5, Saldanha Report, at 2-3.  Accordingly, the Court concludes that, based on Dr. Saldanha's education, experience and skill, he qualifies as an expert to testify in this case.

### 2. Reliability

"'An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.'"  *Goldstein*, 2025 U.S. Dist LEXIS 188931, at *14 (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)).  "Expert opinions should be excluded when the flaw in the expert's reasoning or methodology is 'large enough that the expert lacks good grounds for his or her conclusions.'"  *Id.*

(quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)) (other citation omitted).  "Courts 'must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached.'"  *Id.* at 14-15 (quoting *Amorgianos*, 303 F.3d at 266).  However, "'conclusions and methodology are not entirely distinct from one another'; 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert,' and a court may exclude expert testimony if it determines that 'there is simply too great an analytical gap between the data and the opinion proffered.'"  *Id.* at 15 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).

"The flexible *Daubert* inquiry gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact."  *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002).  "To warrant admissibility, however, it is critical that an expert's analysis be reliable at every step."  *Id.*  "[T]he *Daubert* 'requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for each step in the analysis -- means that *any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*.'"  *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)) (other citation omitted).

"In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand."  *Amorgianos*, 303 F.3d at 267.  "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se*

inadmissible." *Id.* "'The judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions.'" *Id.* (quoting *In re Paoli*, 35 F.3d at 746) (other citation omitted). "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* Accordingly, "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596)) (other citation omitted).

Furthermore, "'[a]s the Second Circuit has noted, district courts should presume expert evidence is reliable.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *15 (quoting *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 456 (E.D.N.Y. 2007) (citing *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995))). "'[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility . . . .'" *Id.* (quoting *In re Zyprexa*, 489 F. Supp. 2d at 285 (quoting *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992))). "Although it establishes a 'gatekeeper' function for expert testimony, the *Daubert* test is nonetheless 'a liberal' and 'permissive' standard of admissibility." *Phelps v. CBS Corp.*, No. 17-cv-8361 (AJN), 2020 US Dist. LEXIS 223300, *9 (S.D.N.Y. Nov. 30, 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005)). Thus, "[e]xpert testimony should be excluded only 'if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an applies and oranges comparison.'" *Id.* (quoting *Restivo*, 846 F.3d at 577 (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))). "Absent this degree of unreliability, any 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the

testimony.'"  *Id.* (quoting [*Restivo*, 846 F.3d at 577] (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996))).

In this case, Dr. Saldanha concluded that

> [t]he mental disorders which Ms. Farrell has experienced over the course of her lifetime are multifactorial in etiology and her psychiatric diagnoses have occurred in a complex context of contributing biological and psychosocial factors.  Rather than being a sole or principal cause, the abuse by Mr. Gabel is one of several factors that have contributed to the onset and course of mental disorders she has experienced.

*See* Dkt. No. 244-5, Saldanha Report, at 3.

Dr. Saldanha opined that, over Plaintiff's lifetime, she had experienced borderline personality disorder, an eating disorder, major depressive disorder, and a mild alcohol use disorder.  *See id.*

Dr. Saldanha opined that, "[t]hough [Plaintiff's] records indicate that some treaters have also diagnosed PTSD or listed it as a rule out diagnosis, the information available does not support this diagnosis."  *See* Dkt. No. 244-5, Saldanha Report, at 35 (footnote omitted).  To arrive at this conclusion, Dr. Saldanha reasoned that, "[s]ince the abuse, [Plaintiff] has not shown a consistent presence of avoidance of stimuli associated with the abuse or marked alterations in arousal and reactivity, domains of symptoms which are present in PTSD."  *See id.* at 36.  Dr. Saldanha noted that, "[s]ince this episode of abuse, [Plaintiff] has not shown persistent avoidance of or efforts to avoid memories, thoughts, or feelings related to the events or people, places, activities, or situations related to the abuse."  *See id.*  Dr. Saldanha further asserted that, although "psychological testing performed as part of the evaluation showed significant emotional distress [it did] not support the diagnosis of PTSD."  *See id.*  Dr. Saldanha stated that "[Plaintiff] did not strongly endorse symptoms consistent with PTSD apart from a loss of interest in activities and a negative emotional state, symptoms consistent with episodes of major depression."  *See id.*

The Court concludes that, by outlining the symptoms that he looks for when identifying cases of PTSD and explaining why, in his opinion, Plaintiff is not experiencing these symptoms, Dr. Saldanha adequately explained the methodology he used to reach his conclusion.

Although Plaintiff criticizes Dr. Saldanha's opinion that she is not experiencing PTSD, *see* Dkt. No. 328, Plaintiff's Reply, at 11, "the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos*, 303 F.3d at 266 (citing *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786). Furthermore, expert testimony should only be excluded where "'the expert lacks "good grounds" for his or her conclusions.'" *Id.* at 267 (quoting *In re Paoli*, 35 F.3d at 746) (other citation omitted). Dr. Saldanha explained that, in his opinion, the symptoms Plaintiff described were more consistent with major depressive disorder than with PTSD. *See* Dkt. No. 244-5, Saldanha Report, at 36. Dr. Saldanha clearly articulated that, because Plaintiff was not exhibiting avoidance of stimuli or changes in reactivity, he did not believe that a PTSD diagnosis was appropriate. *See id.* Therefore, because Plaintiff is not displaying symptoms typically associated with a condition, Dr. Saldanha concluded that Plaintiff is not suffering from that condition. *See id.* Under these circumstances, it cannot be said that Dr. Saldanha "lacks good grounds" for this conclusion.

Furthermore, the Court notes that, in assessing reliability, the principles and methodology employed should be assessed, not the outcome of those methods. *See Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14-*15 (quoting *Amorgianos*, 303 F.3d at 266). Moreover, it is not unusual for reasonable minds to differ even when both apply reliable methodology in reaching such differing conclusions. For all these reasons, the Court concludes that Plaintiff's displeasure with Dr. Saldanha's conclusion is not a ground for excluding him from testifying.

Furthermore, the Court concludes that Plaintiff's contention that Dr. Saldanha is merely acting as an "advocate for a cause" and that, therefore, the Court should exclude his testimony as unreliable, *see* Dkt. No. 328, Plaintiff's Reply Memorandum, at 15, is unavailing. To the contrary, in his report, Dr. Saldanha acknowledges that Plaintiff is experiencing psychological issues such as major depressive disorder. *See* Dkt. No. 244-5, Saldanha Report, at 3. Furthermore, he acknowledges that Plaintiff "should receive ongoing treatment involving psychotherapy and pharmacologic management of her conditions." *See id.* at 3-4. Finally, Dr. Saldanha acknowledges that Defendant Gabel's alleged abuse is a factor in exacerbating Plaintiff's mental issues and does not entirely discount the existence of Plaintiff's psychological disorders or Defendant Gabel's role in contributing to these disorders. For all these reasons, the Court concludes that Dr. Saldanha is not merely acting as an advocate for a cause.

### 3. Relevance

If a court concludes that a witness is qualified as an expert and that his testimony rests on a reliable foundation, it must determine whether that testimony is "'relevant to the task at hand.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (quoting *Daubert*, 509 U.S. at 597)). "Testimony will be relevant if it 'assist[s] the trier of fact to understand the evidence or to determine the fact in issue.'" *United States v. Taylor*, 18 F.3d 55, 59 (2d Cir. 1994) (quoting Fed. R. Evid. 702).

In this case, whether Plaintiff suffered psychological injury as a result of Defendant Gabel's alleged abuse is a critical issue in this case. *See, e.g., Gross v. New York City Transit Auth.*, 256 A.D.2d 128, 129 (1st Dep't 1998). Dr. Saldanha's expert opinion is directly relevant to both the psychological issues from which Plaintiff suffers and the cause of those problems. *See*

*generally* Dkt. No. 224-5, Saldanha Report.  Accordingly, the Court finds that Dr. Saldanha's expert testimony is relevant to the issues in this case.

In sum, the Court concludes that Dr. Saldanha meets all the requirements for testifying as an expert in this case.  Accordingly, the Court denies Plaintiff's motion to exclude Dr. Saldanha from testifying as an expert in this case.

## III. CONCLUSION

After reviewing the entire file in this case, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion to exclude the expert testimony of Dr. Saldanha, *see* Dkt. No. 244, is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 17, 2026
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge