**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**BRIGID "BRIDIE" FARRELL,**

                         **Plaintiff,**

          **v.**                                    **1:20-CV-1178**
                                                      **(FJS/PJE)**

**THE UNITED STATES OLYMPIC &**
**PARALYMPIC COMMITTEE, a Business**
**Entity of Form Unknown; US SPEEDSKATING,**
**a Business Entity of Form Unknown; THE**
**SARATOGA WINTER CLUB, a Business**
**Entity of Form Unknown; and ANDREW**
**"ANDY" GABEL, an individual,**

                         **Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BARNES & THORNBURG LLP** | **AMY E. TRYON, ESQ.** |
| 222 Delaware Avenue, Suite 1200 | **CHARLES G. LA BELLA, ESQ.** |
| Wilmington, Delaware 19801 | **JAMES F. MURDICA, ESQ.** |
|     -and- | **JOSEPH G. EATON, ESQ.** |
| 655 West Broadway, Suite 1300 | **MICHAEL A. BATTLE, ESQ.** |
| San Diego, California 92101 | **MICHELLE BRADFORD, ESQ.** |
|     -and- | |
| 390 Madison Avenue, Suite 12th Floor | |
| New York, New York 10017-2509 | |
|     -and- | |
| 11 South Meridian Street | |
| Indianapolis, Indiana 46204 | |
|     -and- | |
| 555 12th Street, N.W., Suite 1200 | |
| Washington, D.C. 20006 | |
| Attorneys for Plaintiff | |
| | |
| **MOJDEHI GALVIN REGO LLP** | **ANDREW J. GALVIN, ESQ.** |
| 2550 Fifth Avenue, Suite 910 | |
| San Diego, California 92103 | |
| Attorneys for Plaintiff | |

**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, California 94306
        -and-
30 Hudson Yards
New York, New York 10001
Attorneys for Defendant The
United States Olympic &
Paralympic Committee

**LINDSEY C. BARNHART, ESQ.**
**SARA J. DENNIS, ESQ.**

**LAW OFFICES OF HOWARD L. JACOBS**
31111 Agoura Road, Suite 225
Westlake Village, California 91361
Attorneys for Defendant US Speedskating

**KATLIN FREEMAN, ESQ.**
**HOWARD JACOBS, ESQ.**”

**COFFEY LAW PLLC**
17 Elk Street
Albany, New York 12207
Attorneys for Defendant US Speedskating

**DANIEL W. COFFEY, ESQ.**

**MCGIVNEY KLUGER CLARK & INTOCCIA, P.C.**
100 Madison Street, Suite 1640
Syracuse, New York 13202
Attorneys for Defendant The
Saratoga Winter Club

**MEAGAN E. DEAN, ESQ.**

**AIDALA BERTUNA & KAMINS PC**
546 Fifth Avene, Suite 6th Floor
New York, New York 10036
Attorneys for Defendant Andrew
"Andy" Gabel

**IMRAN H. ANSARI, ESQ.**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed her complaint in this action on July 30, 2020, *see* Dkt. No. 2, Complaint,

seeking compensatory damages and punitive damages pursuant to the Child Victims Act. *See id.*

at ¶ 5 (citing 22 NYCRR 202.72) (other citation omitted). Plaintiff alleges that Defendant Gabel

groomed and sexually abused her from June 1997 to January 1998. *See id.* at ¶ 6. As a result of that alleged abuse, Plaintiff asserts the following causes of action: (1) negligence against Defendants United States Olympic and Paralympic Committee ("USOPC"), U.S. Speedskating ("USS"), and The Saratoga Winter Club ("SWC"), *see id.* at ¶¶ 90-101; (2) assault and battery against Defendant Gabel, *see id.* at ¶¶ 102-107; (3) negligent infliction of emotional distress against all Defendants, *see id.* at ¶¶ 108-112; and (4) intentional infliction of emotional distress against all Defendants. *See id.* at ¶¶ 113-117.

Pending before the Court is Defendant USOPC's motion to exclude the expert testimony of Dr. Paul Ballas pursuant to Rule 702 of the Federal Rules of Evidence. *See* Dkt. No. 248. Plaintiff opposes this motion. *See* Dkt. No. 311. Defendant USOPC also filed a related motion to strike paragraphs 7-25 of Dr. Ballas's Declaration, *see* Dkt. No. 311-3, which Plaintiff included in the papers she filed in opposition to Defendant USOPC's motion to exclude Dr. Ballas's expert testimony*, see* Dkt. No. 325-2. Plaintiff opposes this motion and requests that the Court strike the motion. *See* Dkt. No. 336-1.

## II. DISCUSSION[1]

### A.    **Defendant USOPC's motion to exclude parts of Dr. Paul Ballas's expert testimony**[2]

#### *1. Defendant USOPC's position*

Defendant USOPC argues that the Court should exclude three of the opinions Dr. Ballas offers. *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 7 (citing *Amorgianos*

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing system generates, which are located in the top right corner of those pages.

[2] Defendants USS, SWC, and Andrew Gabel join in Defendant USOPC's motion. *See* Dkt. No. 248, Notice of Motion, at 3.

*v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)).  Defendant USOPC takes issue

with Dr. Ballas's opinions that Plaintiff developed psychiatric symptoms because of Defendant

Gabel's abuse, that Defendant Gabel's abuse impacted her employment capacity, and the cost of

Plaintiff's psychiatric treatment.  *See id.* at 6-7.  Defendant USOPC seeks to exclude these

portions of Dr. Ballas's testimony on the ground that Dr. Ballas applied unreliable methods in

reaching each of these conclusions.  *See generally id.*

Specifically, Defendant USOPC requests that the Court exclude Dr. Ballas from testify

about the following:

> (1) his causation opinions, namely, that "Ms. Farrell experienced the onset of severe psychiatric  symptoms following the sexual abuse that occurred from 1997-1998" and that "Ms. Farrell developed a depressive disorder in addition to PTSD as a consequence of the serious trauma inflicted upon her by Andy Gable [sic] from 1997-1998. . . ."  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 29 (quoting Ex. 1 (Ballas Rpt.) at 16).
>
> (2) his vocational functioning opinions, namely, that "the sexual and emotional abuse that occurred from 1997-1998 had an impact on [P]laintiff's future ability to function in her employment capacity. . . ."  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law at 29 (quoting [Ex. 1 (Ballas Rpt.) at 16]).
>
> (3) his opinions regarding Plaintiff's past and future medical costs attributable to the alleged abuse.  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law at 29 (quoting [Ex. 1 (Ballas Rpt.) at 16-17]).

### 2. *Plaintiff's position*

Plaintiff contends that Dr. Ballas reliably determined that she developed psychiatric

symptoms because of the alleged abuse she suffered as a teenager.  *See* Dkt. No. 311-4, Plaintiff's

Memorandum of Law, at 5.  Plaintiff argues that Dr. Ballas did so accurately, identifying this

abuse as the "index" event and ruling out other potential causes of her trauma and concluding

that these symptoms clearly impact her relationships and vocational functioning.  *See id.*
Furthermore, Plaintiff argues that Dr. Ballas is qualified to estimate future medical costs "based
on his . . . experience with medication management and evaluating treatment plans, including for
insurance companies, for patients with the same kind of psychiatric injuries and the resulting
costs and that his testimony is based on sufficient facts, thereby satisfying Rule 702 and *Daubert*.
*See id.* at 8.

### 3. Analysis

"Trial courts serve as gatekeepers for expert evidence and are responsible for 'ensuring
that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"
*Goldstein v. Montefiore Med. Ctr.*, No. 22-CV-6723 (AT) (RFT), 2025 U.S. Dist. LEXIS 188931,
*12 (S.D.N.Y. Sept. 25, 2025) (quoting *Daubert*, 509 U.S. at 597).  "'The party seeking to
introduce the expert testimony bears the burden of establishing by a preponderance of the
evidence that the proffered testimony is admissible.'"  *Id.* (quoting *Sec. & Exch. Comm'n v.
Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 503-04 (S.D.N.Y. 2018) (citing *Daubert*, 509 U.S.
at 592)).  "Although a district court has 'broad discretion to carry out this gatekeeping function,' .
. . 'exclusion remains the exception rather than the rule.'"  *Id.* (quoting *Navigators Ins. Co. v.
Goyard, Inc.*, 608 F. Supp. 3d 44, 47 (S.D.N.Y. 2022); *In re AXA Equitable Life Ins. Co. COI
Litig.*, 595 F. Supp. 3d 196, 250 (S.D.N.Y. 2022), *on reconsideration in part*, No. 16-CV-0740
(JMF), 2022 U.S. Dist. LEXIS 135303, 2022 WL 3018104 (S.D.N.Y. July 29, 2022)).

"Rule 702 requires that 'expert testimony rest on knowledge, a term that connotes more
than subjective belief or unsupported speculation.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931,
at *13 (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004)

(quoting *Daubert*, 509 U.S. at 590)).  "In assessing the admissibility of expert testimony under Rule 702, courts consider three factors: '(1) the qualifications of the expert to testify as to a particular matter, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of the expert's testimony (*i.e.*, whether the expert's testimony as to a particular matter will assist the trier of fact).'"  *Id.* (quoting *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-CV-7636 (JPC) (BCM), 2022 U.S. Dist. LEXIS 56020, 2022 WL 902465, at *6 (S.D.N.Y. Mar. 28, 2022) (quoting *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005))).

The Court will address each of these factors in turn.

### *(i) Qualifications*

"'To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *13 (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).  "'If an expert's training and experience are in a field closely related to the subject matter of the proposed testimony, that showing may be sufficient to meet Rule 702's qualification standards in appropriate circumstances.'"  *Id.* at *13-*14 (quoting *In re M/V MSC Flaminia*, No. 12-CV-8892 (KBF), 2017 U.S. Dist. LEXIS 119146, 2017 WL 3208598, at *4 (S.D.N.Y. July 28, 2017)).

There is no dispute that Dr. Ballas, a trained psychiatrist with Board Certifications in Child, Adolescent, and Adult Psychiatry, is qualified to testify about causation.  *See* Dkt.. No. 248-3, Ballas Report, at 3.

### (ii) Relevance

"After concluding that a witness is qualified as an expert, a court then examines whether 'the expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (quoting *Daubert*, 509 U.S. at 597)).  "Testimony will be relevant if it 'assist[s] the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Taylor*, 18 F.3d 55, 59 (2d Cir. 1994) (quoting Fed. R. Evid. 702).

There is no dispute that Dr. Ballas's causation testimony is relevant.  *See generally* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law.

### (iii) Reliability

"'An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.'"  *Goldstein*, 2025 U.S. Dist LEXIS 188931, at *14 (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)).  "Expert opinions should be excluded when the flaw in the expert's reasoning or methodology is 'large enough that the expert lacks good grounds for his or her conclusions.'"  *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)) (other citation omitted).  "Courts 'must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached.'"  *Id.* at 14-15 (quoting *Amorgianos*, 303 F.3d at 266).  However, "'conclusions and methodology are not entirely distinct from one another'; 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert,' and a court may exclude expert testimony if it determines that 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* at 15 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).

"The flexible *Daubert* inquiry gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002). "To warrant admissibility, however, it is critical that an expert's analysis be reliable at every step." *Id.* "[T]he *Daubert* 'requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for each step in the analysis -- means that *any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)) (other citation omitted).

"In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*, 303 F.3d at 267. "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* "'The judge should only exclude the evidence if the flaw is large enough that the expert lacks "good grounds" for his or her conclusions.'" *Id.* (quoting *In re Paoli*, 35 F.3d at 746) (other citation omitted). "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* Accordingly, "'vigorous cross-examination, presentation of contrary evidence, and careful

- 8 -

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"  *Id.* (quoting *Daubert*, 509 U.S. at 596)) (other citation omitted).

Furthermore, "'[a]s the Second Circuit has noted, district courts should presume expert evidence is reliable.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *15 (quoting *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 456 (E.D.N.Y. 2007) (citing *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995))).  "'[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility . . . .'"  *Id.* (quoting *In re Zyprexa*, 489 F. Supp. 2d at 285 (quoting *United States v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992))). "Although it establishes a 'gatekeeper' function for expert testimony, the *Daubert* test is nonetheless 'a liberal' and 'permissive' standard of admissibility."  *Phelps v. CBS Corp.*, No. 17-cv-8361 (AJN), 2020 US Dist. LEXIS 223300, *9 (S.D.N.Y. Nov. 30, 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005)).  Thus, "[e]xpert testimony should be excluded only 'if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'"  *Id.* (quoting *Restivo*, 846 F.3d at 577 (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))).  "Absent this degree of unreliability, any 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'"  *Id.* (quoting [*Restivo*, 846 F.3d at 577] (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996))).

### (a) Causation opinion

Defendant USOPC argues that Dr. Ballas's causation opinion lacks a foundation and proffers speculative opinions.  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law,

at 12 (quoting *Vale v. United States*, 673 F. App'x 114, 116-17 (2d Cir. 2016)).  Defendant

USOPC also asserts that Dr. Ballas's testimony is unreliable because he failed to rule out

potential alternate causes of Plaintiff's mental injuries.  *See id.* (quoting *Munafo v. Metro Transp.*

*Auth.*, Nos. 98-CV-742 (ERK), 00-CV-0134 (ERK), 2003 WL 21799913, at *18 (E.D.N.Y. Jan.

22, 2003)) (other citations omitted).

Defendant USOPC contends that, contrary to Dr. Ballas's claim, Plaintiff's lack of

documented functional impairment prior to the alleged abuse cannot be used to establish a

demarcation of psychiatric symptoms because there is a lack of impairment after the alleged

abuse as well.  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 13.

Defendant USOPC claims that the psychiatric symptoms Dr. Ballas could identify manifested a

decade after the alleged abuse.  *See id.* at 14 (citing Ex. 3 (Ballas Dep.) at 254:13-256:18,

270:04-272:02).  Defendant USOPC argues that Dr. Ballas's pointing to Plaintiff's visits with her

high school counselor as evidence of mental distress is speculation because Dr. Ballas does not

know what was discussed at those meetings, and Plaintiff testified that she never discussed the

abuse with her counselor.  *See id.* (citing Ex. 5 (Farrell Dep. Day 2) at 468:23-471:09).

Furthermore, Defendant USOPC contends that, because Dr. Ballas failed to rule out other

traumatic events as potential causes of Plaintiff's symptoms, his opinion should be excluded.  *See*

Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 16.  Defendant USOPC argues

that, although Plaintiff was assaulted and raped closer in time to the onset of depression and

PTSD, Dr. Ballas failed to consider these instances in assessing the cause of Plaintiff's mental

injuries. *See id.* at 16-17.  Defendant USOPC claims that Dr. Ballas also failed to consider other

significant stressors in Plaintiff's life such as potentially abusive behavior by her father, the

pressures of competing, and multiple physical injuries and surgeries. *See id.* at 17 (citing Ex. 5 (Farrell Dep. Vol. 2) at 365:19-367:19, 384:17-387:02, 388:22-389:19, 485:11-487:09).

In addition, Defendant USOPC contends that, although Dr. Ballas acknowledges in his rebuttal report that these factors could have contributed to Plaintiff's symptomology, he summarily concludes that Plaintiff's PTSD was not caused by these events. *See id.* (citing [Ex. 2 (Ballas Reb. Rpt.) at 13]). Defendant USOPC also argues that this conclusion is without merit because Dr. Ballas cites only the treatment records of Dr. Maloutas and adopting the opinion of another expert is not permissible. *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 17-18 (citing [Ex. 2 (Ballas Reb. Rpt.) at 13; *Quiles v. Bradford-White Corp.*, No. 10-CV-747, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012) (parenthetical omitted)) (other citations omitted). Defendant USOPC therefore argues that, by failing to rule out alternative causes, Dr. Ballas's opinion is speculative and unreliable. *See id.* at 19 (citing *Tardif* [*v. City of New York*], 344 F. Supp. 3d [579,] 601 [S.D.N.Y. 2018)] (parenthetical omitted)) (other citations omitted).

To the contrary, Plaintiff argues that Dr. Ballas's causation opinion is reliable because he considered the fact that, shortly after the alleged abuse, Plaintiff began attending therapy and taking psychiatric medication, noting that she had not received either of these treatment methods prior to the dates of the alleged abuse. *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 13 (citing Dkt. 248-3, Ballas Rep. at 16; Dkt. 248-7, Deposition of Plaintiff Bridie Farrell Vol. 2 ("Plaintiff Dep." Vol. 2), at 470:1-6; Dkt. 248-5, Ballas Dep. at 294:14-302:11). Plaintiff further asserts that Dr. Ballas did consider alternative causes including other instances of sexual assault, family history, and other stressors. *See id.* (citing Dkt. 248-3, Ballas Rep. at 3,7; Dkt. 248-5, Ballas Dep. at 289:4-7; 292:6-12; 363:16-365:4). Plaintiff contends that, after considering

potential alternative causes of her symptoms, Dr. Ballas concluded that Defendant Gabel's abuse was the index event, meaning that it played more of a role in causing her symptoms and increased her chances of being victimized again in the future.  *See id.* at 13-14 (citing Dkt. 248-5, Ballas Dep. at 368:16-369:21, Dkt. 248-4, Ballas Rebuttal at 11-12).

Plaintiff further argues that, although Defendant USOPC claims that Dr. Ballas has no basis to opine on causation, Dr. Ballas considered the dates when she began to attend therapy and was prescribed medication to support his opinion that the alleged abuse caused her psychiatric symptoms.  *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 14 (citing Dkt. 248-5, Ballas Dep. at 254:17-20, 294:14-302:11).  Plaintiff contends that this conclusion is not "'so unrealistic and contradictory as to suggest bad faith,' [and] therefore[,] 'contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'"  *See id.* (quoting *In re: Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9480448, at *1 (S.D.N.Y. Dec. 29, 2015)).  Plaintiff adds that courts have admitted expert testimony where experts relied on the temporal connection between an accident and an injury to establish causation.  *See id.* (citing *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 367 (S.D.N.Y. 2003) (collecting cases) (parenthetical omitted)).

Plaintiff also contends that Dr. Ballas did, in fact, consider alternative causes of her psychiatric conditions.  *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 18.  Plaintiff asserts that Dr. Ballas explained that alternative causes will typically follow the index incident. *See id.* (quoting Dkt. 248-5, Ballas Dep. at 228:21-229:7).  Plaintiff states that Dr. Ballas concluded that the index event for her was Defendant Gable's sexual abuse, which caused her psychological issues to form.  *See id.* (citing Dkt. 248-5, Ballas Dep. at 368:16-369:21[;] Ballas Decl., ¶ 12).

Furthermore, Plaintiff argues that, although Defendant USOPC complains that Dr. Ballas did not ask about other traumatic events she experienced, he explained that doing so to a victim of sexual abuse can be detrimental to their treatment and so he avoided doing so. *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 20 (quoting [Dkt. 248-5, Ballas Dep.] at 226:24-227:14). Plaintiff notes that Dr. Ballas explained that it is not necessary to have "complete information" on all traumatic events in order to diagnose PTSD or identify potential causes. *See id.* (quoting [Dkt. 248-5, Ballas Dep.] at 227:22-228:2). Moreover, Plaintiff argues that Dr. Ballas explained that, where someone is sexually abused as a child, they are more likely to be abused again and that, therefore, this initial abuse led to the subsequent instances of abuse which could have exacerbated Plaintiff's PTSD. *See id.* (citing [Dkt. 248-5, Ballas Dep.] at 274:3-276:2).

Finally, Plaintiff contends that Dr. Ballas applied "proper methodology" by relying on Dr. Maloutas's treatment records in "forming the basis of his opinion." *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 23 (citing *Qube Films Ltd. v. Padell*, 2016 WL 888791, at *3 (S.D.N.Y. Mar. 1, 2016) (parenthetical omitted)). Plaintiff argues that consulting the records of her treating psychiatrist demonstrates that Dr. Ballas relied on sufficient facts in reaching his opinion. *See id.* (quoting [*Qube Films Ltd. v. Padell*, 2016 WL 888791, at *3 (S.D.N.Y. Mar. 1, 2016)]; citing Ballas Decl., ¶ 10). Finally, Plaintiff asserts that any critique Defendant USOPC may have goes to the weight of Dr. Ballas's testimony, not its admissibility. *See id.* (citing Fed. R. Evid. 702 Advisory Comm.'s Notes to 2023 Amendments).

In response to Plaintiff's arguments, Defendant USOPC argues that Dr. Ballas's "clear demarcation" basis for his causation opinion is premised on speculation. *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 4 (quoting [Dkt. No. 248-3] Mot. Ex. 1 (Ballas Rpt.) at 16); (citing

Opp'n at 9-10 (reiterating that this was the basis for Dr. Ballas's causation opinion)).  Defendant USOPC contends that, although Plaintiff claims that Dr. Ballas's "clear demarcation" theory is supported by the fact that she saw her high school counselor shortly after the alleged abuse in 1998, he does not know why she chose to do so.  *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 5 (quoting [Dkt. No. 248-5] Mot. Ex. 3 (Ballas Dep.) at 273:02-06).  Defendant USOPC argues that Plaintiff could not remember what she and her counselor discussed but that they did not discuss the alleged abuse and, therefore, there is no evidence that these visits pertained to the alleged abuse.  *See id.* (citing [Dkt. No. 248-7] Mot. Ex. 5 (Farrell Dep. Day 2) at 468:23-471:09).  Similarly, Defendant USOPC contends that Plaintiff's 2000 sertraline prescription does not provide a basis for the clear demarcation theory because Dr. Ballas does not know why this medication was prescribed."  *See id.* (citing [Dkt. No. 248-5] Mot. Ex. 3 (Ballas Dep. at 245:5-247:8, 326:11-327:4) (parenthetical omitted) (internal footnote omitted).  Finally, Defendant USOPC contends that Dr. Ballas's reliance on Plaintiff's contemporaneous diary entries does not support his clear demarcation theory because he cannot point to any diary entry that displays a change in symptoms around the time of the alleged abuse.  *See id.* at 6 (citing [ECF 311, Plaintiff's] Opp'n[,] at 11).

Furthermore, Defendant USOPC contends that, even if there were grounds to support Dr. Ballas's clear demarcation theory, courts reject causation opinions that are based only on a temporal connection.  *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 6 (citing [Dkt. No. 248-3] Mot. Ex. 1 (Ballas Rpt.) at 16 (parenthetical omitted); *Baker v. Anschustz Expl. Corp.*, 68 F. Supp. 3d 368, 383 (W.D.N.Y. 2014) (parenthetical omitted)) (other citation omitted) (footnote omitted).  Defendant USOPC contends that, although Plaintiff claims that Dr. Ballas was working with significantly more information, he did not have any other information on Plaintiff's

symptoms until 2009, almost a decade after the alleged abuse and after Plaintiff had suffered other instances of abuse in the interim. *See id.* at 7 (quoting [[Dkt. No. 248-3] Mot. Ex. 1 (Ballas Rpt.)] at 2-14 and [Dkt. No. 248-4] Mot. Ex. 2 (Ballas Reb. Rpt.) at 4-11 (parenthetical omitted)). Therefore, Defendant USOPC argues that Dr. Ballas could only point to symptoms Plaintiff began to experience long after the alleged abuse in support of his position. *See id.* (citing [Dkt. No. 248-1] Mot. at 8-9) (footnote omitted).

In addition, Defendant USOPC contends that Dr. Ballas's failure to rule out other potential causes of Plaintiff's symptoms renders his opinion unreliable. *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 7. Defendant USOPC claims that Dr. Ballas did not follow up with Plaintiff regarding other traumatic events because he had already decided that Defendant Gabel's abuse was the primary cause of her symptoms. *See id.* (citing [Dkt. No. 248-5] Mot. Ex. 3 (Ballas Dep.) at 226:08-230:19). Defendant USOPC contends that Dr. Ballas also engaged in circular logic in reasoning that the primary cause was the index event which was the most important event. *See id.* (quoting [[Dkt. No. 248-5] Mot. Ex. 3 (Ballas Dep.)] at 228:15-232:02). Defendant USOPC argues that Plaintiff cannot explain why Dr. Ballas ruled out the other potential causes. *See id.* at 8. Defendant USOPC asserts that, unlike the expert in *Lane v. American Airlines*, Dr. Ballas failed to explain how Defendant Gabel's alleged abuse contributed to Plaintiff's mental health issues. *See id.* at 9 (citing [*Lane v. American Airlines*,] 2024 WL 1200074, *24 [(E.D.N.Y. 2024)]).

Finally, Defendant USOPC contends that Dr. Ballas's reliance on the report of Dr. Maloutas does not cure his failure to rule out other potential causes. *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 9 (footnote omitted). Defendant USOPC argues that an expert cannot rely on the causation testimony of a treating physician to overcome deficiencies in their

own causation opinions. *See id.* (quoting *Quiles v. Bradford-White Corp.*, 2012 WL 1355262, at *7 (N.D.N.Y. Apr 18, 2012); *Mallozzi v. EcoSMART Techs., Inc.*, 2013 WL 2415677, at *13 n.8 (E.D.N.Y. May 31, 2013)) (footnote omitted).

Dr. Ballas opined that Plaintiff developed psychiatric symptoms because of Defendant Gabel's alleged abuse. *See* Dkt. No. 248-3, Ballas Report, at 21-22. Dr. Ballas stated in his report that, "[w]ith regard to trauma related disorders, there is a clear demarcation of psychiatric symptoms before and after the inciting trauma, and this occurred with [Plaintiff]." *See id.* at 22. Dr. Ballas explained that "Ms. Farrell had not experienced any documented functional impairment prior to 1997, had no history of being diagnosed with a psychiatric disorder or experience[d] psychiatric symptoms severe enough to impact her functioning or access to medical or educational support." *See id.* Dr. Ballas added that "[Plaintiff] first began receiving mental health services starting in 1998, after the period of sexual abuse ended and [Defendant Gabel] left Saratoga Springs, [Plaintiff's] hometown." *See id.* Dr. Ballas acknowledged that, "[i]n people who develop psychiatric disorders it is often difficult to identify the proximate cause of how the disorders develop." *See id.* However, Dr. Ballas maintained that "[i]t appears that Ms. Farrell experienced the onset of severe psychiatric symptoms following the sexual abuse that occurred from 1997-1998." *See id.*

By explaining that Plaintiff only began to experience psychiatric symptoms after Defendant Gabel's alleged abuse, Dr. Ballas provided "some explanation as to how [he] came to his conclusion and what methodologies or evidence substantiate that conclusion.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)). Defendant USOPC takes issue with this causation opinion, arguing that, "[g]iven the lack of any evidence or data suggesting that Plaintiff's psychiatric symptoms developed

immediately after her alleged abuse by Defendant Gabel, Dr. Ballas's opinion that there was a 'clear demarcation of symptoms before and after the alleged abuse -- and thus that the alleged abuse *caused* Mr. Farrell's psychiatric symptoms and conditions -- is speculative and should be excluded." *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 15 (citing *Tardif v. City of New York*, 344 F. Supp. 3d 579, 601 (S.D.N.Y. 2018) (parenthetical omitted)) (other citations omitted). However, the Court finds that, even if this was a flaw in Dr. Ballas's reasoning or methodology, this flaw is not "'large enough that [Dr. Ballas] lacks good grounds for his . . . conclusions.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)) (other citation omitted). Moreover, the Court concludes that Dr. Ballas's opinion that, because of a traumatic experience as a child, Plaintiff later in life developed psychiatric conditions that did not exist prior to the traumatic experience is not the type of testimony which "'is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'" *Phelps v. CBC Corp.*, No. 17-cv-8361 (AJN), 2020 U.S. Dist. LEXIS 223300, *9 (S.D.N.Y. Nov. 30, 2020) (quoting *Restivo*, 846 F.3d at 577 (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))).

Defendant USOPC also criticizes the reliability of Dr. Ballas's report by arguing that his "failure to consider and rule out other likely causes of Plaintiff's alleged injuries constitutes an independent and additional reason to exclude his causation opinions." *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 7. However, Dr. Ballas does acknowledge other traumas in his report. *See* Dkt. No. 248-3, Ballas Report, at 14. Dr. Ballas explained that, although other traumatic incidents have occurred, the abuse by Defendant Gabel was the first, making it the

"index event" in causing Plaintiff's trauma.  *See* Dkt. No. 248-5, Ballas Deposition, at 228:15-229:9.  Moreover, Dr. Ballas is not required to eliminate every potential alternative cause of Plaintiff's trauma for the Court to deem his report reliable.  *See Phelps*, 2020 U.S. Dist. LEXIS 223300, at *9 (explaining that, when construing *Daubert*, courts should apply "'a liberal' and "permissive' standard of admissibility" (citing *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005))); *see also Loiseau v. Bozzuto's Inc.*, No. 3:22-CV-01485 (JCH), 2025 U.S. Dist. LEXIS 166830, *6 (D. Conn. Aug. 27, 2025) (explaining in the context of a regression analysis that an expert's decision not to consider potential alternate explanations "impact[s] the probative weight, not the admissibility, of expert evidence").  Defendant USOPC is welcome to attack Dr. Ballas's report on cross-examination and raise potential alternative causes of Plaintiff's injuries.  *See Amorgianos*, 303 F.3d at 267 (quoting *Daubert*, 509 U.S. at 596) (other citation omitted).  The existence of potential other causes, however, goes to the weight of the testimony, not its admissibility.  *See Phelps*, 2020 U.S. Dist. LEXIS 223300, *9 (quoting *Restivo*, 846 F.3d at 577 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996))); *see also Loiseau*, 2025 U.S. Dist. LEXIS 166830, at *6.

Finally, Defendant USOPC takes issue with the Ballas report to the extent that Dr. Ballas relied on Dr. Maloutas's conclusions.  *See* Dkt. No. 329-1, Defendant USOPC's Reply, at 9.  However, an expert's reliance on a plaintiff's treatment record will not bar this expert's testimony from being admitted.  *See Betts v. Sixty Lower E. Side, LLC*, No. 20 Civ. 4772 (NRB), 2025 U.S. Dist. LEXIS 124176, *13 (S.D.N.Y. June 30, 2025).  In fact, in *Betts*, the court found that the expert's "review of plaintiff's medical records spanning approximately eight years, in conjunction with his own evaluation is sufficient to meet the requirements of Rule 702(a)."  *Id.* (citing *Daubert*, 509 U.S. at 588-89 (the Federal Rules of Evidence take a "general approach of relaxing

the traditional barriers to opinion testimony [that] counsel in favor of admissibility") (quotations and citations omitted)).

For all the above-stated reasons, the Court concludes that the methodology that Dr. Ballas used to reach his conclusions about the cause of Plaintiff's psychological injuries is reasonable and, therefore, the Court denies Defendant USOP's motion to exclude Dr. Ballas from testifying as an expert regarding the cause of Plaintiff's injuries.

### (b) Dr. Ballas's opinion regarding Plaintiff's vocational capacity

Dr. Ballas opines that Plaintiff's "ongoing symptoms are clearly affecting her relationships and vocational functioning." *See* Dkt. No. 248-3, Ballas Report, at 22. Furthermore, Dr. Ballas opines that, "[i]n [his] opinion, the sexual and emotional abuse that occurred from 1997-1998 had an impact on [Plaintiff's] future ability to function in her employment capacity, since her PTSD, anxiety, [and] depressive symptoms were directly related to this abuse." *See id.* As it did with regard to Dr. Ballas's causation opinion, the Court finds that this conclusion is not "'speculative or conjectural or based on assumptions that are unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'" *Phelps*, 2020 U.S. Dist. LEXIS 223300, at *9 (quoting *Restivo*, 846 F.3d at 577 (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))). Dr. Ballas, a trained psychiatrist, opines that the severe psychological symptoms Plaintiff is experiencing impacted her ability to function in her career. This application of Dr. Ballas's training and experience does not contain a "flaw in [his expert] reasoning or methodology [that] is 'large enough that [he] lacks good ground for his . . . conclusions.'" *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267

(2d Cir. 2002)) (other citation omitted).  Accordingly, the Court finds that Dr. Ballas's opinion regarding Plaintiff's vocational capacity is reliable and, therefore, denies Defendant USOPC's motion to exclude Dr. Ballas from testifying regarding this issue.

### (c) Dr. Ballas's medical cost opinions

Defendant USOPC contends that, although Dr. Ballas purportedly calculated Plaintiff's medical costs stemming from the alleged abuse, his methods for calculating those costs are unreliable and should not be considered.  *See* Dkt. No. 248-18, Defendant USOPC's Memorandum of Law, at 24-25.  With regard to past costs, Defendant USOPC argues that Dr. Ballas's estimate is contradicted by the record and does not reflect the costs Plaintiff actually incurred.  *See id.* at 25.  Regarding future costs, Defendant USOPC asserts that Dr. Ballas's estimate is flawed because it assumes that Plaintiff will live and require treatment for 40 more years.  *See id.*

In response, Plaintiff argues that Dr. Ballas's opinions regarding the costs of her psychiatric treatment are reliable.  *See* Dkt. No. 311-4, Plaintiff's Memorandum of Law, at 27. Plaintiff asserts that Dr. Ballas has experience in managing medication and has worked for insurance companies to determine whether a certain medication is necessary and has also done so for the purposes of litigation.  *See id.* at 28 (citing Dkt. 248-5, Ballas Dep. at 27:16-20; 43:7-25; 47:24-48:19).  In addition, Plaintiff asserts that Dr. Ballas's experience also pertains to individuals who have suffered from childhood sexual abuse.  *See id.* (citing [Dkt. 248-5, Ballas Dep.] at 70:21-72:10).

With regard to the issue of past medical costs, Dr. Ballas estimates that "the financial cost of [Plaintiff's] therapy and psychiatric visits since 2014 was approximately $40,000."  *See* Dkt.

No. 248-3, Ballas Report, at 23.  An expert's testimony must "'both rest[] on a reliable foundation and [be] relevant to the task at hand.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (quoting *Daubert*, 509 U.S. at 597)).  In this case, Dr. Ballas's estimate of past medical expenses is not reliable.  Plaintiff's past expenses stemming from the alleged abuse can be calculated with specificity based on her actual treatment records.  There is no need for an expert to estimate what those costs were.  Furthermore, Dr. Ballas's estimate of past treatment costs is unreliable because it includes costs that Plaintiff never incurred because, during certain periods, she received no treatment and, thus did not incur any costs.  Therefore, the Court finds that Dr. Ballas may not testify about Plaintiff's past medical costs because any such testimony would be neither reliable nor necessary.

With regard to future medical expenses, Dr. Ballas opines that Plaintiff will require mental health treatment "for at least an additional 40 years. . . ."  *See* Dkt. No. 248-3, Ballas Report, at 23.  As noted, when determining whether to admit expert testimony, a court must consider the qualifications of an expert to testify as to a particular matter.  *See Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *13 (quoting *Bocoum v. Daimer Trucks N. Am. LLC*, No. 17-CV-7636 (JPC) (BCM), 2022 U.S. Dist. LEXIS 56020, 2022 WL 902465, at *6 (S.D.N.Y. Mar. 28, 2022) (quoting *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005))).  In this case, Dr. Ballas has not provided any information that suggests that he is qualified to testify about an individual's life expectancy or that he has any actuarial experience.  *See generally* Dkt. No. 248-3, Ballas Report.  Therefore, the Court finds that Dr. Ballas lacks the base level qualifications that Rule 702 requires to opine on Plaintiff's life expectancy.  *See Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *13 (quoting *Bocoum v. Daimler Trucks N. Am. LLC*, No. 17-CV-7636 (JPC)

(BCM), 2022 U.S. Dist. LEXIS 56020, 2022 WL 902465, at *6 (S.D.N.Y. Mar. 28, 2022) (quoting *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005))).  Accordingly, the Court finds that Dr. Ballas's life expectancy calculation is not reliable; and, therefore, the Court precludes Dr. Ballas from testifying about his opinion as to Plaintiff's life expectancy.  However, he may testify, based on his training and experience as a trained psychiatrist and his interviews with Plaintiff, that she will require further psychological care for much of the remainder of her life.  *See* Dkt. No. 248-3, Ballas Report, at 23.

Furthermore, the Court finds that Dr. Ballas is qualified to testify regarding his opinion about Plaintiff's yearly medical costs.  In this regard, Dr. Ballas states that, "[w]ith regards to estimates of projections of future therapy, psychiatric visits, medication management, and EMDR [(eye movement desensitization and reprocessing)] treatment[,] . . . going forward the cost of Ms. Farrell's psychiatric disorders will be approximately $5[,]000/year for therapy and psychiatric visits, medication management will cost approximately $269/year and at least one full trial of EMDR will cost $2[,]000."  *See* Dkt. No. 248-3, Ballas Report, at 23.  This approach does not contain a "flaw in the expert's reasoning or methodology [which] is 'large enough that the expert lacks good grounds for his or her conclusions.'"  *Goldstein*, 2025 U.S. Dist. LEXIS 188931, at *14 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)) (other citation omitted).  For all these reasons, the Court finds that Dr. Ballas's estimate of Plaintiff's yearly medical costs is reliable based on Dr. Ballas's experience as a treating psychiatrist.  Therefore, the Court finds that Dr. Ballas may testify as to his expert opinion regarding the yearly costs of Plaintiff's medical needs and his opinion that she will require further psychological care for much of the remainder of her life; however, he may **not** testify as to his opinion regarding Plaintiff's life-expectancy.

The Court also finds that Dr. Ballas's opinion regarding Plaintiff's future medical cost is relevant because it will assist the trier of fact in tabulating any damages to which the trier of fact concludes Plaintiff is entitled.

Therefore, the Court grants Defendant USOPC's motion to exclude the testimony of Dr. Ballas as it pertains to past medical costs and Plaintiff's life expectancy but denies that motion to the extent it pertains to Dr. Ballas's opinion regarding Plaintiff's future yearly medical expenses and that she will require further psychological care for much of the remainder of her life.

**B.      Defendant USOPC's motion to strike Dr. Ballas's May 30, 2024 Declaration**

Defendant USOPC contends that the Declaration of Dr. Ballas that Plaintiff filed in support of her opposition to its motion to exclude Dr. Ballas's testimony contains new opinions asserted after the close of discovery and contains improper legal arguments. *See* Dkt. No. 325-2 at 4.  Accordingly, Defendant USOPC argues that the Court should strike paragraphs 7-25 of that Declaration.  *See id.*

In response, Plaintiff argues that Dr. Ballas does not assert new opinions nor does he make improper legal arguments in his May 30, 2024 Declaration and that, therefore, the Court should strike Defendant USOPC's motion to strike because it is nothing more than an improper attempt to extend its page limitations pertaining to its motion to exclude Dr. Ballas's testimony. *See generally* Dkt. No. 336-1.

"Fed. R. Civ. P. 26(a)(2)(B) . . . requires that an expert's report contain 'a complete statement of all opinions to be expressed and the basis and reasons therefor . . . .'" *Com. Data Servers, Inc. v. IBM*, 262 F. Supp. 2d 50, 61 (S.D.N.Y. 2003).  "It is essential that the expert's opinions be known to the other party, so that they may properly prepare their opposition." *Id.*

"As a result, under Fed. R. Civ. P. 37(c)(1) . . ., 'a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.'" *Id.* However, where a subsequent declaration is substantially similar to an initial expert report, such a declaration is permitted to be considered at trial. *See id.*

"In determining whether supplemental evidence submitted after discovery deadlines should be excluded, courts follow a set of guiding principles." *Alan L. Frank Law Assocs., P.C. v. OOO Rm Invest*, No. 17-CV-1338 (NGG) (ARL), 2021 U.S. Dist. LEXIS 90390, *13 (E.D.N.Y. May 12, 2021). "On one hand, courts 'must exclude' 'expert declarations filed in response to a *Daubert* motion' when they 'expound[] a wholly new and complex approach designed to fill a significant and logical gap in the first report.'" *Id.* (quoting *Phoenix Light*, 2019 WL 5957221, at *2). "On the other hand, 'courts may consider evidentiary details that a declaration provides in support of opinions already expressed in the expert's report' when such details 'merely amplify and provide more support for' the previously expressed opinions." *Id.* (quoting [*Phoenix Light*, 2019 WL 5957221, at *2]).

"When a *Daubert* motion invokes concerns about the reliability and application of the expert's methodology, declarations that are responsive to such concerns are generally seen as supplying a permissible form of support." *Alan L. Frank Law Assocs., P.C.*, 2021 U.S. Dist LEXIS 90390, *13 (citing [*Phoenix Light*, 2019 WL 5957221, at *2]; *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 43 (S.D.N.Y. 2014)). "'The key issue is whether the expert's declaration is sufficiently within the scope of the initial expert report, so that an opposing party is not sandbagged with new evidence.'" *Id.* at 13-14 (quoting *Phoenix Light*, 2019 WL 5957221, at *2).

Where a declaration "offers . . . opinions on an entirely different topic than the one discussed in [the] Rule 26 report," this can be grounds to strike the declaration. *Com. Data Servers, Inc.*, 262 F. Supp. 2d at 61. However, even in such circumstances, "failure to comply with Rule 26(a) does not always provide a basis for sanctions under Rule 37(c)(1)." *Id.* at 62. "[T]he text of Rule 37(c)(1) provides that the evidence should be precluded only if the party that failed to disclose the information is 'without substantial justification' and if the failure is not 'harmless.'" *Id.* (quoting Fed. R. Civ. Pro. 37(c)(1)). Furthermore, the Second Circuit has "considered imposition of sanctions under Rule 37 a 'drastic remedy' that should only be applied 'in those rare cases where a party's conduct represents flagrant bad faith and callous disregard' of the Federal Rules." *Id.* (quoting *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999); *Sterling v. Interlake Industries, Inc.*, 154 F.R.D. 579, 587 (E.D.N.Y. 1994)).

The Court has reviewed the information contained in Dr. Ballas's May 30, 2024 Declaration and finds that it is related to the initial Ballas report. For example, in this declaration, Dr. Ballas reaffirms much of what he has already stated or is responding to Defendant USOPC's criticisms of his report. *See generally* Dkt. No. 311-3. For example, Defendant USOPC takes issue with Dr. Ballas connecting Defendant Gabel's alleged abuse with Plaintiff's career path. *See* Dkt. No. 325-2 at 4. However, in his expert report, Dr. Ballas opines that Defendant Gabel's abuse had an impact on Plaintiff's employment capacity. *See* Dkt. No. 248-3 at 22. Accordingly, reaffirming this belief in his declaration is "within the scope of [his] initial expert report;" and he is not sandbagging Defendant USOPC by doing so. Furthermore, other than USOPC's complaint regarding Plaintiff's career path, Defendant USOPC fails to

identify other specific portions of the Ballas Declaration that are outside the scope of Dr. Ballas's initial report.  *See generally* Dkt. No. 325-2.

Furthermore, the Court finds that Defendant USOPC's argument that Dr. Ballas is making improper legal arguments in his May 30, 2024 Declaration is without merit.  In all the paragraphs that Defendant USOPC cites as alleging impermissible legal arguments, no such arguments are made.  *See* Dkt. No. 325-2 at 7-9.  Rather, Dr. Ballas is permissibly responding to the criticisms of his expert report that Defendant USOPC made in its motion to exclude those reports.  *See Alan L. Frank Law Assocs., P.C. v. OOO Rm Invest*, 2021 U.S. Dist. LEXIS 90390, *13 (E.D.N.Y. 2021) ("When a *Daubert* motion invokes concerns about the reliability and application of the expert's methodology, declarations that are responsive to such concerns are generally seen as supplying a permissible form of support").  In fact, in several paragraphs of his May 30, 2024 Declaration, Dr. Ballas addresses a particular concern or criticism that Defendant USOPC raised.

In addition, the Second Circuit has made clear that there is a high standard to strike such a declaration, deeming it a "drastic remedy."  *See Com. Data Servers, Inc.*, 262 F. Supp. 2d at 62 (citing *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999); *Sterling v. Interlake Industries, Inc.*, 154 F.R.D. 579, 587 (E.D.N.Y. 1994)).  In this case, it does not appear that Plaintiff was acting in bad faith when she submitted Dr. Ballas's May 30, 2024 Declaration or attempting to impermissibly further additional legal arguments.  *See generally* Dkt. No. 311-3.  Rather, most of that declaration responds to criticisms Defendant USOPC raised.  *See generally id.*  This does not rise to the level of "flagrant bad faith and callous disregard of the Federal Rules," which would merit striking the declaration.  *Com. Data Servers, Inc.*, 262 F. Supp. 2d at 62 (citing *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F.

Supp. 2d 446, 458 (S.D.N.Y. 1999); *Sterling v. Interlake Industries, Inc.*, 154 F.R.D. 579, 587 (E.D.N.Y. 1994) (internal quotations omitted)).

For all of the above-stated reasons, the Court denies Defendant USOPC's motion to strike Dr. Ballas's May 30, 2024 Declaration.

Finally, in addition to opposing Defendant USOPC's motion to strike Dr. Ballas's May 30, 2024 Declaration, Plaintiff also moves to strike Defendant USOPC's motion to strike that Declaration on the ground that such motion impermissibly increased Defendant USOPC's page limit with regard to its reply in support of its motion to exclude Dr. Ballas's testimony. *See* Dkt. No. 336-1 at 10. The Court denies Plaintiff's motion finding that it borders on the frivolous.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that, to the extent that Defendant USOPC's motion, *see* Dkt. No. 248, seeks to exclude the expert testimony of Dr. Ballas with respect to (1) causation, (2) vocational capacity, and (3) future yearly medical costs, the motion is **DENIED**; and the Court further

**ORDERS** that, to the extent that Defendant USOPC's motion, *see* Dkt. 248, seeks to exclude the expert testimony of Dr. Ballas regarding (1) Plaintiff's past medical costs and (2) her life expectancy, the motion is **GRANTED**. There is no need for an expert to testify about Plaintiff's past medical costs and Dr. Ballas lacks any qualifications that would enable him to calculate Plaintiff's life expectancy; and the Court further

**ORDERS** that Defendant USOPC's motion to strike Dr. Ballas' May 30, 2024 Declaration, *see* Dkt. No. 325-2, is **DENIED**; and the Court further

- 28 -

**ORDERS** that Plaintiff's motion to strike Defendant USOPC's motion to strike Dr.

Ballas's May 30, 2024 Declaration, *see* Dkt. No. 336-1, is **DENIED**.


**IT IS SO ORDERED.**

Dated:  June 22, 2026
      Syracuse, New York

                                                 Frederick J. Scullin, Jr.
                                                 Senior United States District Judge