UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRIGID "BRIDIE" FARRELL,

                       **Plaintiff,**

           **v.**

THE UNITED STATES OLYMPIC &
PARALYMPIC COMMITTEE, a Business
Entity of Form Unknown; US SPEEDSKATING,
a Business Entity of Form Unknown; THE
SARATOGA WINTER CLUB, a Business
Entity of Form Unknown; and ANDREW
"ANDY" GABEL, an individual,

                       **Defendants.**

                                  1:20-CV-1178
                                  (FJS/PJE)

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **BARNES & THORNBURG LLP**<br>222 Delaware Avenue, Suite 1200<br>Wilmington, Delaware 19801<br>    -and-<br>655 West Broadway, Suite 1300<br>San Diego, California 92101<br>    -and-<br>390 Madison Avenue, Suite 12th Floor<br>New York, New York 10017-2509<br>    -and-<br>11 South Meridian Street<br>Indianapolis, Indiana 46204<br>    -and-<br>555 12th Street, N.W., Suite 1200<br>Washington, D.C. 20006<br>Attorneys for Plaintiff | **AMY E. TRYON, ESQ.**<br>**CHARLES G. LA BELLA, ESQ.**<br>**JAMES F. MURDICA, ESQ.**<br>**JOSEPH G. EATON, ESQ.**<br>**MICHAEL A. BATTLE, ESQ.**<br>**MICHELLE BRADFORD, ESQ.** |
| **MOJDEHI GALVIN REGO LLP**<br>2550 Fifth Avenue, Suite 910<br>San Diego, California 92103<br>Attorneys for Plaintiff | **ANDREW J. GALVIN, ESQ.** |

**COVINGTON & BURLING LLP**          **LINDSEY C. BARNHART, ESQ.**
3000 El Camino Real                  **SARA J. DENNIS, ESQ.**
5 Palo Alto Square
Palo Alto, California 94306
      -and-
30 Hudson Yards
New York, New York 10001
Attorneys for Defendant The
United States Olympic &
Paralympic Committee

**LAW OFFICES OF HOWARD L. JACOBS**    **KATLIN FREEMAN, ESQ.**
31111 Agoura Road, Suite 225           **HOWARD JACOBS, ESQ.**”
Westlake Village, California 91361
Attorneys for Defendant US Speedskating

**COFFEY LAW PLLC**                  **DANIEL W. COFFEY, ESQ.**
17 Elk Street
Albany, New York 12207
Attorneys for Defendant US Speedskating

**MCGIVNEY KLUGER CLARK &**          **MEAGAN E. DEAN, ESQ.**
**INTOCCIA, P.C.**
100 Madison Street, Suite 1640
Syracuse, New York 13202
Attorneys for Defendant The
Saratoga Winter Club

**AIDALA BERTUNA & KAMINS PC**      **IMRAN H. ANSARI, ESQ.**
546 Fifth Avene, Suite 6th Floor
New York, New York 10036
Attorneys for Defendant Andrew
"Andy" Gabel

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. MOTION

Pending before the Court is Defendant Saratoga Winter Club's ("SWC") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 246. Plaintiff opposes this motion. *See* Dkt. No. 313.

## II. BACKGROUND[1]

Plaintiff's complaint contains four causes of action, three of which she asserts against Defendant SWC.  *See* Dkt. No. 2, Complaint, at ¶¶ 90-117.  Plaintiff asserts claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Defendant SWC.  *See id.* at ¶¶ 90-101, 108-117.

The basis for these claims is Plaintiff's allegation that, when she was 15-years old, Defendant Andy Gabel, a 33-year-old speedskating teammate and mentor, abused her over a course of seven months.  *See id.* at ¶ 1.  Plaintiff contends that this abuse "was committed at various speedskating facilities and at times when Gabel and the other named Defendants, institutions, and authorities within the speedskating sport, were entrusted with [her] safety and well-being."  *See id.*  Plaintiff claims that Defendant SWC, a speedskating training facility, is affiliated with the U.S. Olympic and Paralympic Committee.  *See id.* at ¶ 19.  Plaintiff further contends that Defendant SWC "attracted Olympic athletes, such as Defendant Gabel, to its location for training, due to the high level and top caliber coaches who volunteered there, including [Pat] Maxwell," who "was recognized in the speedskating world as one of the premier coaches in the United States."  *See id.* at ¶¶ 19, 35.

Plaintiff alleges that, "[d]uring the time he sexually abused [her], [Defendant] Gabel at times resided in Saratoga Springs, New York."  *See* Dkt. No. 2, Complaint, at ¶ 28.  Plaintiff asserts that, "[i]n 1994, [at the age of 12 she] . . . first met [Defendant] Gabel through the SWC."  *See id.* at ¶ 34.  Plaintiff contends that, "[a]t all relevant times, [she] and her parents believed that [Defendant] SWC and Pat Maxwell, as its agent, would exercise such due care as would a parent

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which are located in the top right corner of those pages.

of ordinary prudence in comparable circumstances, when Defendant [] SWC and Pat Maxwell assumed supervision, care, custody, and control of Plaintiff." *See id.* at ¶ 40.  Plaintiff contends that Defendant Gabel first abused her in his car when he was transporting her to and from practices.  *See id*. at ¶ 46.  Plaintiff also alleges that Defendant Gabel abused her at Saratoga Lake, the Saratoga Battlefield, a home he rented, at the Lake Placid Olympic Training Center, and at Art Devlin's Olympic Motor Inn where he was staying during the 1998 Olympic Trials, at which she and Defendant Gabel were skating.  *See id.* at ¶¶ 47, 49, 56, 57.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  When seeking summary judgment, "[t]he moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations 'which it believes demonstrate[s] the absence of a genuine issue of material fact[.]'"  *Snellinger v. Fannie Mae*, 785 F. Supp. 3d 3, 6 (S.D.N.Y. 2025) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  "A genuine dispute of material facts exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505) (other citations omitted).

Defendant SWC moves for summary judgment with regard to all three of the claims that Plaintiff has asserted against it: (1) negligence, (2) negligent infliction of emotional distress, and (3) intentional infliction of emotional distress.  *See* Dkt. No. 246-24, Defendant SWC's Memorandum of Law, at 3-4.  Defendant WSC argues that it is entitled to summary judgment for three reasons:

> (1) as to Plaintiff's negligence claim . . ., there is no evidence, nor even any allegation, that any instance of alleged abuse occurred while Plaintiff was in the care, custody or control of SWC, and notwithstanding, SWC lacked actual or constructive notice of either the alleged abuse or Gabel's alleged propensity for sexual abuse; (2) as to Plaintiff's Negligent Infliction of Emotional Distress claim . . ., the claim should be precluded as duplicative given that her alleged "mental injury" is a consequential rather than direct, result of the alleged breach and, notwithstanding, there is no evidence, nor even any allegation, that any instance of alleged injuries occurred while Plaintiff was in the care, custody, or control of SWC and, further, no evidence that SWC endangered the Plaintiff's physical safety or caused the Plaintiff to fear for her own physical safety; and (3) as to Plaintiff's claim for Intentional Infliction of Emotional Distress . . ., there is no evidence, nor even any allegation, that any instance of alleged injuries or abuse occurred while Plaintiff was in the care, custody, or control of SWC, and notwithstanding, there is no evidence that SWC acted with intent to harm Plaintiff or that its actions were extreme and outrageous.

*See id.*

The Court will address each of these claims in turn.

## B.     Plaintiff's negligence claim

"To establish a *prima facie* case [of negligence] against [a] defendant[], [a] plaintiff must establish (1) the existence of a duty on [that defendant's] part to plaintiff; (2) a breach of that duty; and (3) that such breach was a substantial cause of the resulting injury[.]"  *Gross v. New*

*York City Transit Auth.*, 256 A.D.2d 128, 129 (1st Dep't 1998) (citing *Merino v. New York City Tr. Auth.*, 218 A.D.2d 451, 457, *affd* 89 N.Y.2d 824).  "In the absence of a duty, as a matter of law, no liability can ensue."  *Gonzalz v. Pius*, 138 A.D.2d 453, 454 (2d Dep't 1988) (citing *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 528).

In some instances, organizations, such as school districts, can owe a duty "in loco parentis" to minors within their control.  *See Doe v. Ward*, 2024 N.Y. Misc. LEXIS 4081, *5 (N.Y. Sup. Ct., Kings Cty., 2024).  For example, "[a]s a general matter, '[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision[.]'"  *Nash v. Port Wash. Union Free Sch. Dist.*, 83 A.D.3d 136, 146 (2d Dep't 2011) (quoting *Mirand v. City of New York*, 84 N.Y.2d 44, 49 [1994]) (other citations omitted).  "'The duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians[.]'"  *Id.* at 147 (quoting *Mirand v. City of New York*, 84 N.Y.2d at 49).  "Since the duty owed is derived from the school's assumption of custody of and control over the students, in place of parents and guardians, 'the school's "duty to protects its students from negligence is coextensive with and concomitant to its physical custody and control over its students" and . . . "[t]herefore, once students leave their school's orbit of authority, parents are free to resume custodial control and the school's custodial duty ceases."'"  *Id.* (quoting *Hansen v. Bath & Tennis Mar. Corp.*, 73 A.D.3d at 701 (quoting *Banks v. New York City Dept. of Educ.*, 70 A.D.3d 988, 990 [2010])).

In this case, Plaintiff alleges that Defendant Gabel abused her in his car, at Saratoga Springs State Park, at a house he rented, at the Saratoga Springs Battlefield, in her parents' home, at the Art Devlin Olympic Motor Inn, and at the Olympic Education Training Center at Northern

Michigan University, none of which are under the control of Defendant SWC.  *See* Dkt. No. 313-1, Plaintiff's Response to Defendant SWC's Statement of Material Facts, at ¶ 49.[2]

New York courts have been clear that *in loco parentis* duty stems directly from an organization's "physical custody and control over" a minor and that this duty ends once that physical custody and control ends.  *Nash*, 83 A.D. at 147 (quoting *Hansen v. Bath & Tennis Mar. Corp.*, 73 A.D.3d at 701 (quoting *Banks v. New York City Dept. of Educ.*, 70 A.D.3d 988, 990 [2010])).  Thus, where here, the plaintiff is unable to point to anything in the record to support her allegation that Defendant Gabel abused her while she was under Defendant SWC's control and/or on its property, her claim of negligence based on a theory of *in loco parentis* fails.

Alternatively, Plaintiff argues that, "while Andy Gabel lived, trained, and coached in Saratoga, he did so in a way that was at the invitation and approval of [Defendant] SWC and Maxwell."  *See* Dkt. No. 313, Plaintiff's Memorandum in Opposition, at 14.  Therefore, Plaintiff asserts that Defendant SWC created "this potentially hazardous situation . . . released Plaintiff into [it]."  *See id.*  Plaintiff argues that, although a school's duty generally ends when it relinquishes control of a student, the duty continues when the school releases a student into a hazard of its own making.  *See id.* (quoting *Ernest v. Red. Cr. Cent. School Dist.*, No. 121, 93 N.Y.2d 664, 671 (N.Y. July 8, 1999) (quoting *McDonald v. Central School Dist. No. 3* (179 Misc 333))).

---

[2] Although Plaintiff disputes Defendant SWC's assertion that she was not abused while under its control, the only fact she points to in support of this argument is that "Gabel told her to sit next [to him] while she changed clothes in the SWC locker rooms."  *See* Dkt. No. 313-1 at ¶ 50 (citing Dkt. 246-10, (Pl. Tr. Vol. 3), 789:23-790:16; 798:10-21).  However, although Plaintiff states that Defendant Gabel told her to sit next to him, she does not assert that he abused her while they were sitting next to each other in the locker room.  *See id.*

The Court finds, however, that *Ernest*, the case Plaintiff cites to support her argument, is distinguishable.  In *Ernest*, the court addressed a scenario in which "[t]he School District, as a safety precaution, had a long-standing policy of waiting until all of the school buses had departed before allowing walking students to leave the school grounds."  *Ernest*, 93 N.Y.2d at 670. However, on the day of the accident, the School District allowed the walking students, including the injured child, to leave the school grounds and start their walk home "before the buses drove away from the school."  *Id.*  The injured child's mother sued the School District, among others, claiming, among other things, "that the School District was negligent in failing to follow its own policy of not releasing walking students until after all of the school buses had departed from the school."  *Id.*

The court, noting that, in *McDonald v. Central School Dist. No. 3* (179 Misc 333 [Van Voorhis, J.], *aff'd without opn* 264 App Div 943, *affd without opn* 289 NY 800), it had "upheld the ruling of Supreme Court which recognized that, although a school district's duty of care toward a student generally ends when it relinquishes custody of the student, the duty continues when the student is released into a potentially hazardous situation, particularly when the hazard is partly of the school district's own making."  *Ernest*, 93 N.Y.2d at 671.  Thus, the court in *Ernest* explained that "*McDonald* stands for the proposition that a school district's duty of care requires continued exercise of control and supervision in the event that release of the child poses foreseeable risk of harm."  *Id.* at 672.  Thus, the court in *Ernest* found that the lower court should not have granted summary judgment to the School District because the plaintiff's "averment of a long-standing school policy not to release the students who walk home until all of its buses had departed, in recognition of the enhanced risks caused by the presence of the buses, is evidence that the type of accident that occurred in this case was foreseeable."  *Id.*

*Ernest* is distinguishable from this case.  As noted, none of the incidents of abuse occurred on Defendant SWC's property, Defendant SWC did not provide transportation to any events nor did Defendant SWC arrange for Defendant Gabel to drive Plaintiff home when she left Defendant SWC's premises.  Nor did Defendant SWC employ Defendant Gabel.  Therefore, the Court concludes that Plaintiff has come forward with any evidence that would support a finding that it was responsible for any acts of abuse when Plaintiff was not on its premises.

In sum, the Court finds that Plaintiff has failed to establish the existence of a material fact as to whether she was in the custody or under the control of Defendant SWC when Defendant Gabel allegedly abused her.  In fact, Plaintiff acknowledges that none of the alleged incidents of abuse occurred while she was on the premises or under the control of Defendant SWC and, therefore, she cannot establish that Defendant SWC had a duty to protect her.  Therefore, the Court grants Defendant SWC's motion for summary judgment with regard to Plaintiff's negligence claim.

**C.    Plaintiff's negligent infliction of emotional distress claim**

To state a claim for negligent infliction of emotional distress, a plaintiff must establish "a breach of a duty owed to [her], which either unreasonably endangers [her] physical safety, or causes [her] to fear for her own safety[.]"  *Monaghan v. Roman Catholic Diocese of Rockville Ctr.*, 2015 N.Y. Misc. LEXIS 5265, *9-*10 (Sup. Ct., Nassau County, 2015) (citing *Ferreyr v. Soros*, 116 A.D.3d 407, 984 N.Y.S.2d 296 [1st Dept. 2014]; *Bernstein v. East 51' St. Dev. Co., LLC*, 78 A.D.3d 590, 914 N.Y.S.2d 3 [1[s]t Dept. 2010]).

Under the circumstances of this case, Plaintiff's claim for negligence and her claim for negligent infliction of emotional distress are duplicative.  Accordingly, for the same reasons that

the Court granted Defendant SWC's motion for summary judgment with regard to Plaintiff's negligence claim, it also grants that motion with respect to Plaintiff's claim for negligent infliction of emotional distress.

**D.      Plaintiff's intentional infliction of emotional distress claim**

"The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Klein v. Metropolitan Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dep't 2012) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 [1993]; *Andrews v.* Bruk, 220 A.D.2d 376, 376 [1995]). Furthermore, "[t]he subject conduct must be '"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community"'" *Id.* (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment d; *see Andrews v. Bruk,* 220 A.D.2d at 376-377) "Furthermore, conclusory assertions are insufficient to set forth a cause of action sounding in the intentional infliction of emotional distress." *Id.* at 711 (citing *Welsh v. Haven Manor Health Care Ctr.*, 15 A.D.3d 572 [2005]).

This standard is "'rigorous, and difficult to satisfy.'" *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993) (quoting Prosser and Keeton, Torts § 12, at 60-61 [5th ed]) (other citation omitted).  New York courts have held, however, that, where an institution employed a known child abuser, thereby giving them access to children, this is sufficiently outrageous to support an intentional infliction of emotional distress claim. *See, e.g., Georgiou v. Sacred*

- 10 -

*Patriarchal & Stravropegial Orthodox Monastary of St. Irene Chrysovalantou*, 242 A.D.3d 950 (2d Dep't 2025); *Novak v. Sisters of the Heart of Mary*, 210 A.D.3d 1104, 1106 (2d Dep't 2022).

In this case, Plaintiff alleges that Defendant SWC and Coach Maxwell had knowledge of Defendant Gabel's propensity to abuse young female athletes. *See* Dkt. No. 2, Complaint, at ¶ 20 (claiming that "many within the USOC, the USEOC, USS, and the SWC already knew about Gabel's reputation for grooming and molesting young female speedskaters."). However, Plaintiff does not allege or argue that Defendant Gabel was an employee of Defendant SWC. *See generally id.* Moreover, Plaintiff has not pointed to any evidence in the record that Defendant SWC had any control over Defendant Gabel and, as noted above, Plaintiff has not pointed to anything in the record to show that any instances of the alleged abuse occurred on Defendant SWC's premises or during any time that Defendant SWC had any control over Plaintiff.

Lacking any such evidence, the Court concludes that there is nothing in the record to support Plaintiffs claim that Defendant SWC engaged in any intentional or reckless conduct. Therefore, the Court grants Defendant SWC's motion for summary judgment with regard to Plaintiff's intentional infliction of emotional distress claim.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant The Saratoga Winter Club's motion for summary judgment, *see* Dkt. No. 246, is **GRANTED.**

**IT IS SO ORDERED.**

Dated: July 7, 2026
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge