UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

BRIGID "BRIDIE" FARRELL,

                    Plaintiff,

        v.                                              1:20-CV-1178
                                                        (FJS/PJE)
THE UNITED STATES OLYMPIC &
PARALYMPIC COMMITTEE, a Business
Entity of Form Unknown; US SPEEDSKATING,
a Business Entity of Form Unknown; THE
SARATOGA WINTER CLUB, a Business
Entity of Form Unknown; and ANDREW
"ANDY" GABEL, an individual,

                    Defendants.

───────────────────────────────────

APPEARANCES                                      OF COUNSEL

BARNES & THORNBURG LLP                           AMY E. TRYON, ESQ.
222 Delaware Avenue, Suite 1200                  CHARLES G. LA BELLA, ESQ.
Wilmington, Delaware 19801                       JAMES F. MURDICA, ESQ.
        -and-                                    JOSEPH G. EATON, ESQ.
655 West Broadway, Suite 1300                    MICHAEL A. BATTLE, ESQ.
San Diego, California 92101                      MICHELLE BRADFORD, ESQ.
        -and-
390 Madison Avenue, Suite 12th Floor
New York, New York 10017-2509
        -and-
11 South Meridian Street
Indianapolis, Indiana 46204
        -and-
555 12th Street, N.W., Suite 1200
Washington, D.C. 20006
Attorneys for Plaintiff

MOJDEHI GALVIN REGO LLP                          ANDREW J. GALVIN, ESQ.
2550 Fifth Avenue, Suite 910
San Diego, California 92103
Attorneys for Plaintiff

**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square
Palo Alto, California 94306
        -and-
30 Hudson Yards
New York, New York 10001
Attorneys for Defendant The
United States Olympic &
Paralympic Committee

**LINDSEY C. BARNHART, ESQ.**
**SARA J. DENNIS, ESQ.**

**LAW OFFICES OF HOWARD L. JACOBS**
31111 Agoura Road, Suite 225
Westlake Village, California 91361
Attorneys for Defendant US Speedskating

**KATLIN FREEMAN, ESQ.**
**HOWARD JACOBS, ESQ.**"

**COFFEY LAW PLLC**
17 Elk Street
Albany, New York 12207
Attorneys for Defendant US Speedskating

**DANIEL W. COFFEY, ESQ.**

**MCGIVNEY KLUGER CLARK & INTOCCIA, P.C.**
100 Madison Street, Suite 1640
Syracuse, New York 13202
Attorneys for Defendant The
Saratoga Winter Club

**MEAGAN E. DEAN, ESQ.**

**AIDALA BERTUNA & KAMINS PC**
546 Fifth Avene, Suite 6th Floor
New York, New York 10036
Attorneys for Defendant Andrew
"Andy" Gabel

**IMRAN H. ANSARI, ESQ.**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. MOTIONS

Pending before the Court are Defendant United States Olympic & Paralympic

Committee's ("USOPC") and Defendant U.S. Speedskating's ("USS") motions for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 247, 251.

Plaintiff opposes these motions.  *See* Dkt. Nos. 314, 315.

## II. BACKGROUND

Plaintiff alleges that, when she was 15-years-old, she was abused over the course of

seven months by Defendant Andy Gabel, a 33-year-old speedskating teammate.  *See* Dkt. No. 2,

Complaint, at ¶ 1.  Plaintiff contends that this abuse "was committed at various speedskating

facilities and at times when [Defendant] Gabel and the other named Defendants, institutions, and

authorities within the speedskating sport, were entrusted with Plaintiff's safety and well-being."

*See id.*  Plaintiff further claims that Defendants USOPC and USS ignored credible allegations

regarding Defendant Gabel's behavior and, despite these allegations, allowed him to remain a

member of their organizations.  *See id.* at ¶ 2.

Both Defendant USOPC and Defendant USS have filed motions for summary judgment

with regard to all of the claims Plaintiff has asserted against them: (1) negligence, (2) negligent

infliction of emotional distress, and (3) intentional infliction of emotional distress.  *See* Dkt. No.

247, Defendant USOPC's Notice of Motion; Dkt. No. 251, Defendant USS's Notice of Motion.

In addition, Defendant USOPC moves for summary judgment with regard to Defendant USS's

and Defendant SWC's cross-claims against it.  *See* Dkt. No. 247.

The parties agree that, from 1988 to 1998, Defendant USOPC operated sports training

centers, including the Lake Placid Olympic Training Center ("OTC"), which National Governing

Bodies ("NGBs"), including Defendant USS, could request to use.  *See* Dkt. No. 324, Reply

Statement of Material Facts, at ¶ 23.  Plaintiff contends that at least one of the instances of

alleged abuse occurred at the Lake Placid OTC.  *See* Dkt. No. 2, Complaint, at ¶ 56.

### III. DISCUSSION[1]

A.      **Preliminary matters**

   *1. Local Rule 56.1(b)*

Defendant USS contends that "Plaintiff has not submitted evidentiary proof in admissible form because she failed to file a Statement of Material Facts in Dispute in accordance with L.R. 56.1(b) [and that,] therefore, [i]t objects to [P]laintiff's [O]pposition in response to its Motion for Summary Judgment on procedural grounds." *See* Dkt. No. 332-2, Defendant USS's Reply, at 4 (citing L.R. 56.1(b); [Dkt. No. 332-3] USS Reply Statement of Material Facts ("Reply SUMF") Part I). Defendant USS argues that, "[i]nstead of following the correct procedure and citing to her own Statement of Material Facts in Dispute, the [Plaintiff's Response in Opposition to US Speedskating's Motion for Summary Judgment ("Pl. Opp. Br.") simply references parts of deposition transcripts filed by USS and her own declaration." *See id.* Defendant USS claims that, "[i]n doing so, USS is denied the opportunity to respond to the assertions in the [P]laintiff's response brief because such assertions are not properly submitted in a separate Statement of Facts." *See id.* at 4-5. Therefore, Defendant USS contends that, "[b]ecause the [P]laintiff has failed to provide sufficient evidence to rebut USS's factual allegations, the Court must accept USS's facts as admitted for purposes of its Motion." *See id.* at 5 (citing *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d at 412, 418 (2d Cir. 2009)).

This District's Local Rule 56.1(b) provides that, in response to a Statement of Material Facts,

> [t]he opposing party shall file a separate Response to the Statement
> of Material Facts. The opposing party[']s response shall mirror the

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which are located in the top right corner of those pages.

movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  <u>The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>  In addition, the opposing party's Response **may** set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established.  The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

*See* N.D.N.Y. L.R. 56.1(b) (emphasis added).

Defendant USS misconstrues what Local Rule 56.1(b) requires.  The language of Local Rule 56.1(b) **permits**, but does not require, an opposing party to include a Statement of *Additional* Material Facts in Dispute in its Response to the Statement of Material Facts.  *See* L.R. 56.1(b).  Therefore, the Court denies Defendant USS's request that the Court "accept USS's facts as admitted for purposes of its Motion."  *See* Dkt. No. 332-2, Defendant USS's Reply, at 5 (citation omitted).

### 2. *Plaintiff's motion to strike the Declaration of Lindsey Barnhart*

Plaintiff filed a motion to strike the Declaration of Lindsey Barnhart, which Defendant USOPC submitted in support of its Reply in Support of Its Statement of Material Facts.  *See* Dkt. No. 337-2, Plaintiff's Motion to Strike.  Defendant USOPC opposes the motion.  *See* Dkt. No. 344, Defendant USOPC's Opposition.

Plaintiff takes issue with the two exhibits attached to the Barnhart Declaration.  *See* Dkt. No. 337-2, Plaintiff's Motion to Strike, at 4.  The first exhibit is Defendant USS's Statement of Income and Expenses from September 1, 1991, to March 31, 1992.  *See* Dkt. No. 324-3, Exhibit

1, at 2.  The second exhibit is the United States Olympic Training Center's Program Request Form.  *See* Dkt. No. 324-4, Exhibit 2, at 2.  Plaintiff contends that it is improper for Defendant USOPC to submit this new evidence because it is not being submitted in response to a new issue she raised in her opposition to USOPC's motion for summary judgment and because these documents were readily available to Defendant USOPC at the time it filed its motion for summary judgment.  *See* Dkt. No. 337-2, Plaintiff's Motion to Strike, at 4.

Furthermore, Plaintiff argues, this evidence only pertains to the contentions Defendant USOPC made in its Statement of Material Facts in support of its motion for summary judgment. *See id.* at 5.  Plaintiff claims that Defendant USOPC cites Exhibit 1 in support of its contention that USS was not financially dependent on it.  *See id.*  With regard to Exhibit 2, Plaintiff contends that Defendant USOPC cites this document "in support of its contention that USOPC did not exert operational control over the Northern Michigan University Olympic Training Center ("NMU OTC")."  *See id.* (citing Dkt. 324-1, USOPC Reply Statement of Material Facts at 26).  Therefore, Plaintiff requests that the Court strike the Barnhart Declaration or, in the alternative, grant her leave to file a sur-reply.  *See id.* at 7-8.

In response, Defendant USOPC contends that the exhibits at issue respond to new arguments and facts that Plaintiff raised in her opposition to its motion for summary judgment and that, accordingly, they were properly included with its reply brief.  *See* Dkt. No. 344, Defendant USOPC's Opposition, at 5.  Defendant USOPC further argues that Plaintiff improperly raised new arguments and factual issues in responding to its Statement of Material Facts in support of its motion for summary judgment and that, accordingly, it was justified in introducing these new exhibits to respond to Plaintiff's new issues.  *See id.*

With regard to Exhibit 1, Statement of Income and Expenses, Defendant USOPC claims that "[t]his exhibit was cited to rebut Plaintiff's new argument that USS was 'financially dependent' on funding from the USOPC." *See id.* (quoting ECF No. 324-1 at ¶¶ 2, 5-7, 11).

With regard to Exhibit 2, the Program Request Form, Defendant USOPC contends that Plaintiff improperly raised an argument that Defendant USOPC exercised operational control over the NMU training center and so this exhibit was necessary to rebut said argument. *See id.* at 6 (quoting ECF No. 324-1 at ¶ 45).

Defendant USOPC further argues that Plaintiff has not suffered any prejudice due to these exhibits because she has long been on notice and because she actually produced Exhibit 1 in this litigation. *See id.* at 7.

Accordingly, for all these reasons, Defendant USOPC requests that the Court deny Plaintiff's motion to strike the Declaration of Lindsey Barnhart. *See id.* at 8.

"'Whether to grant or deny a motion to strike is vested in the trial court's sound discretion.'" *Nash v. HomeGoods, Inc.*, No. 16-cv-1043 (AMD) (VMS), 2019 U.S. Dist. LEXIS 55151, *31 (E.D.N.Y. Mar. 29, 2019) (quoting *Pharm., Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-776, 2007 U.S. Dist. LEXIS 74384, 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999))). "Motions to strike are 'generally disfavor[ed],' and moving parties bear a heavy burden." *Id.* (quoting [*Pharmacy, Inc.*, 2007 WL 2728898, at *1]). "Striking is warranted where the materials at issue are 'abusive or otherwise improper under the circumstances.'" *Outlaw v. City of New York*, No. 22 Civ. 9288 (PAL), 2024 U.S. Dist. LEXIS 209615, *9 (S.D.N.Y. Nov. 19, 2024) (quoting *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 9 Civ. 2669, 2015 U.S. Dist. LEXIS 105907, 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting *NRDC v. United States*

*FDA*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012) (parenthetical omitted)).  "A court may strike portions of reply submissions if they add new material that should have been included in the opening papers, as long as the new material is not merely in response to a new issue raised by the opposition papers."  *Perez v. Manna 2nd Ave. LLC*, No. 15 civ. 4655 (JCF), 2016 U.S. Dist. LEXIS 179222, *9 (S.D.N.Y. Dec. 28, 2016) (citing *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (parenthetical omitted); *Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.*, 513 F. Supp. 2d 18, 19-20 (S.D.N.Y. 2007)).  Finally, in considering a motion to strike, "the Court's primary concern is whether the opposing party suffered any prejudice."  *Brown Publ'g Co. v. Brown*, No. 15-MC-0531(JS), 2017 WL 455418, *3 (E.D.N.Y. Feb. 1, 2017) (citing *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013)).

After reviewing the documents at issue and the parties' arguments, the Court concludes that, despite Plaintiff's characterization of the issue, Defendant USOPC is not ambushing her with these exhibits.  Plaintiff already had access to both documents and, in fact, Plaintiff produced Exhibit 1.  Therefore, despite her arguments to the contrary, Plaintiff will suffer no prejudice by the introduction of these documents.  Accordingly, the Court denies Plaintiff's motion to strike the Declaration of Lindsey Barnhart, and, consequently, denies Plaintiff's request for leave to file a reply in further support of her motion.

**B.      Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* When seeking summary judgment, "[t]he moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations 'which it believes demonstrate[s] the absence of a genuine issue of material fact[.]'" *Snellinger v. Fannie Mae*, 785 F. Supp. 3d 3, 6 (S.D.N.Y. 2025) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "A genuine dispute of material facts exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505) (other citations omitted).

### C.    Plaintiff's Negligence Claim

"To establish a *prima facie* case [of negligence] against [a] defendant[], [a] plaintiff must establish (1) the existence of a duty on their part to plaintiff; (2) breach of that duty; and (3) that such breach was a substantial cause of the resulting injury." *Gross v. New York City Transit Auth.*, 256 A.D.2d 128, 129 (1st Dep't 1998) (citing *Merino v. New York City Tr. Auth.*, 218 A.D.2d 451, 457, *affd* 89 N.Y.2d 824). "In the absence of a duty, as a matter of law, no liability can ensue." *Gonzalez v. Pius*, 138 A.D.2d 453, 454 (2d Dep't 1988) (citing *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523, 528).

#### 1. Defendant USOPC

In support of its motion for summary judgment with regard to Plaintiff's negligence claim, Defendant USOPC contends that parties generally have no duty to control the conduct of third parties "'"to prevent them from causing injury to others."'" *See* Dkt. No. 247-90, Defendant

USOPC's Memorandum of Law at 11 (quoting *Oddo v. Queens Vill. Comm. for Mental Health for Jam. Cmty. Adolescent Program, Inc.*, 71 N.E.3d 946, 948 (N.Y. 2017)).  Furthermore, Defendant USOPC argues that such a duty only exists where "there is a relationship between either (1) 'defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others,' or (2) 'defendant and a third-person tortfeasor that encompasses a defendant's actual control of the third person's actions.'"  *See id.* at 11-12 (quoting *Hamilton v. Baretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001)).  Furthermore, according to Defendant USOPC, "New York law imposes a duty to prevent third persons from causing injury to others only if there 'exist special circumstances in which there is sufficient authority and ability to control the conduct of third persons.'"  *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 12 (quoting *Purdy v. Pub. Adm'r of Westchester Cnty.*, 526 N.E.2d 4, 7-8 (N.Y. 1988)).  Defendant USOPC claims that "[k]ey to establishing actual control 'is that the defendant's relationship with [] the tortfeasor . . . places the defendant in the best position to protect against the risk of harm.'"  *See id.* (quoting [*Hamilton*, 750 N.E.2d at 1061]).

Defendant USOPC argues that it "lacked the ability to control Gabel's conduct and was not in the best position to protect Plaintiff from harm. . . . [Rather,] the record here establishes that either USS or its member club SWC directly supervised athletes and coaches, [Dkt. No. 247-89, SMF] ¶¶ 26-33; they were therefore 'in the best position to protect against the risk of harm.'" *See id.* at 13-14 (citing *Brown*, 40 Cal. App. 5th at 1094-1101; *Hamilton*, 750 N.E.2d at 1061 (a duty may arise when "the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.")).

Defendant USOPC contends that, although New York courts will find the existence of actual control in certain relationships such as employer-employee, parent-child, or common

carrier-passenger, "there is no evidence that such a relationship existed between [it] and [Defendant] Gabel at the time of the alleged abuse (or ever)." *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 14. Defendant USOPC asserts that Defendant "Gabel was never an employee of, and never held a non-employment position with, the USOPC." *See id.* (citing [Dkt. No. 247-89] SMF ¶¶ 15-16). Rather, Defendant USOPC asserts that Defendant Gabel's only affiliation with USOPC "was as a member of the Team USA delegations at the Olympic Games, but USS, not the USOPC selected him for those teams and Plaintiff does not allege abuse at any Games." *See id.* (citing [Dkt. No. 247-89, SMF] ¶¶ 2, 8, 77-80).

Defendant USOPC acknowledges that, although "[a]n agency relationship can also give rise to a duty to control, [] no such relationship existed between Gabel and the USOPC." *See id.* (citing *Dynas v. Nagowski*, 762 N.Y.S.2d 745, 748-49 (N.Y. App. Div. 2003)). Furthermore, Defendant USOPC contends that, although Plaintiff alleges that "incidents of alleged abuse occurred at the Lake Placid OTC and NMU USOEC, NMU does nothing to change the analysis: the USOPC lacked control of Gabel at those facilities." *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 15 (citing [Dkt. No. 247-89, SMF] ¶¶ 38, 45).

Alternatively, Defendant USOPC argues that Plaintiff was not in its care, custody or control during the alleged abuse. *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 15-16. Defendant USOPC argues that, although Plaintiff was on its property, she was entrusted to another's custody at the relevant time and, therefore, no custodial duty existed. *See id.* at 16 (citing *Jonathan A. v. Bd. of Educ. of City of New York*, 779 N.Y.S.2d 3, 6 (N.Y. App. Div. 2004)). In this regard, Defendant USOPC claims that "the Lake Placid OPTC made clear that responsibility for supervising athletes while they were present at the facility lay with the

NGBs . . . [and] . . . USS and SWC understood this supervisory responsibility." *See id.* at 16-17 (citing [Dkt. No. 247-89, SMF] ¶¶ 26-28, 32).

Finally, Defendant USOPC contends that, "[t]o prevail on a negligence claim for failing to protect a minor against alleged sexual assault, a plaintiff must establish 'that defendant was provided with actual or constructive notice that such assaults might be made upon the [] plaintiff so as to give rise to a duty to protect [her].'" *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 18 (quoting *Jamal P. v. City of New York*, 808 N.Y.S.2d 609, 611 (N.Y. App. Div. 2005)). Defendant USOPC asserts that it "had no information in 1997 and 1998 indicating that Gabel posed a likely danger to underage girls." *See id.*

Furthermore, Defendant USOPC argues that, although Plaintiff may rely on the testimony of Ms. Ziegelmeyer, a former speedskater, stating that an employee of the Lake Placid OTPC walked in on her and Defendant Gabel engaged in a sexual activity while she was a minor, this testimony is unreliable and, accordingly, should not be considered in assessing whether it had notice of Defendant Gabel's propensity to abuse minors. *See* Dkt. No. 247-90, Defendant USOPC's Memorandum of Law, at 20-23. Defendant USOPC contends that Ms. Ziegelmeyer identified the employee in a deposition 30 years after the incident in question and, furthermore, that "[e]ye witness identification is of questionable reliability in the best of circumstances." *See id.* at 20 (footnote omitted). Defendant USOPC also argues that "Ms. Ziegelmeyer's own prior statements contradict her deposition testimony; [d]uring a 2013 interview with attorneys investigating allegations against Gabel on behalf of USS, [she] described an incident in which a security guard interrupted her and Gabel in the course of a sexual act at the Lake Placid OPTC. . . . According to her 2013 statement, however, this event occurred in *1993,* when she was at least 17 years old -- over the age of consent in New York." *See id.* at 21 (citing [Dkt. No. 247-89,

SMF ¶ 102]).  Furthermore, Defendant USOPC argues that, even in light of this incident, Defendant Gabel's conduct was not sufficiently foreseeable because the alleged incident with Ms. Ziegelmeyer was isolated and remote in time from Plaintiff's alleged abuse.  *See id.* at 22.

Furthermore, Defendant USOPC argues that, although Plaintiff may point to the 1990 NMU investigation to support her position that it was on notice of Defendant Gabel's dangerous propensities, that investigation determined that the allegations were unsubstantiated.  *See id.* at 23.  Defendant USOPC contends that unsubstantiated allegations against Defendant Gabel would not have put it on notice that he posed a risk to underage skaters.  *See id.*  Furthermore, Defendant USOPC argues that, although Mr. Kleinschmidt, the Assistant Director of the USOEC at the time of the NMU investigation, testified that, "'if [Gabel had] violated a[n] [NMU] policy, . . . it would have been reported to USC and USA Speedskating,'"  Mr. Kleinschmidt did not have actual knowledge of any such report and, because NMU determined that the claim was unsubstantiated, it would not have been reported in any event.  *See id.* at 24.

Finally, Defendant USOPC contends that "there is no record evidence that [it] knew of Gabel's alleged abuse of Plaintiff before 2013 when Plaintiff came forward with her accusations."  *See id.* at 27.  Defendant USOPC asserts that "Plaintiff testified that she and Gabel actively hid their relationship from others."  *See id.* (citing [Dkt. No. 247-89, SMF] ¶ 81). Furthermore, Defendant USOPC asserts that "[n]ot one witness deposed in this litigation, including Plaintiff's parents, Coach Maxwell, or any of the former speedskaters, was aware of any inappropriate behavior by Defendant Gabel towards Plaintiff in 1997-1998.  *See id.* (citing [Dkt. No. 247-89, SMF] ¶¶ 83, 85).  Accordingly, Defendant USOPC contends that "none of these individuals could have informed [it] about Gabel and Plaintiff's relationship."  *See id.* at 27-28.

In response to Defendant USOPC's arguments, Plaintiff contends that Defendant USOPC did, in fact, owe her a duty of care both in its capacity "as the landowner of the Lake Placed OTC and as the entity charged with [her] care and control during her time at the Lake Placed OTC." *See* Dkt. No. 314, Plaintiff's Opposition Memorandum, at 12.

Plaintiff argues that Defendant USOPC "was on notice of Gabe's predatory sexual behavior as early as 1990 because evidence suggests that it knew that Gabel had been investigated for engaging in a sexual relationship with a fifteen-year-old speedskater (Victim #2) at the NMU OTC (the "NMU Investigation")." *See* Dkt. No. 314, Plaintiff's Opposition Memorandum, at 13-14.  In support of this argument, Plaintiff points to the testimony of Jeffery Kleinschmidt, who was the Assistant Director of the NMU OTC at the time that Defendant Gabel allegedly abused Plaintiff, the physical proximity of the USOPC employees to the NMU employees participating in and overseeing the investigation and the fact that Defendant USOPC amended its agreement with NMU to remove USOPC employees from the dorms just over a week after the allegations about Defendant Gabel surfaced.  *See id.* at 14-17.  Plaintiff contends that Defendant USOPC also had constructive notice of Defendant Gabel's misconduct due to its "joint venture with NMU (which plainly had actual notice)." *See id.* at 17-18.  Plaintiff also points to Defendant Gabel's relationship with Victim #3 to support her position that Defendant USOPC had notice of Defendant Gabel's propensity to abuse underage girls.  *See id.* at 21-24.

Alternatively, Plaintiff argues that Defendant USOPC owed her a duty of care on the basis that she was under its "'temporary custody or control.'" *See* Dkt. No. 314, Plaintiff's Opposition, at 26 (quoting *Appell v. Mandel*, 296 A.D.2d 514, 514, 745 N.Y.S.2d 491 (2002) (denying summary judgment where issues of fact existed as to whether defendant supervised plaintiff).  Plaintiff contends that "there is ample evidence that the USOC maintained supervisory

control over the Lake Placid OTC and therefore exercised control, care, and supervision for [Plaintiff]." *See id.*

### 2. Defendant USS

Defendant USS argues that it did not owe Plaintiff a duty of care because it was not aware that Defendant Gabel posed a threat, Plaintiff was not in its control, it did not control Defendant Gabel, and the alleged abuse did not occur on its premises. *See* Dkt. No. 251-3, Defendant USS's Memorandum of Law, at 12. Furthermore, Defendant USS asserts that, even if Plaintiff could establish it owed her a duty, she cannot establish that it breached that duty because it was not aware of Defendant Gabel's propensity to abuse young girls. *See id.*

Defendant USS contends that, to establish it owed Plaintiff a duty to protect her, she must demonstrate that it was aware of Defendant Gabel's propensity to abuse and that she was in its custody and control. *See* Dkt. No. 251-3, Defendant USS's Memorandum of Law, at 14. Defendant USS argues, however, that it did not learn about the 1990 NMU investigation until March 2014. *See id.* (citing [Dkt. No. 251-4] SUMF ¶¶ 46-47). In support of this argument, Defendant USS claims that every person who participated in the investigation confirmed that they did not discuss the investigation with Defendant USS at any point. *See id.* at 14-15 (citing [Dkt. No. 251-4] SUMF ¶ 456). Furthermore, Defendant USS asserts that speedskating athletes at NMU at the time of the report confirmed that they were not aware of any inappropriate relationship between Defendant Gabel and a minor. *See id.* at 15 (citing [Dkt. No. 251-4] SUMF ¶¶ 265, 341, 424).

Defendant USS contends that, "[w]ith respect to the relationships Gabel had with minor female skaters prior to Farrell, each of them confirmed that they did not discuss their relationship

with anyone associated with US Speedskating." *See* Dkt. No. 251-3, Defendant USS's Memorandum of Law, at 15 (citing [Dkt. No. 251-4] SUMF ¶¶ 458-460).  Furthermore, Defendant USS argues that "Pat Maxwell, who was Farrell's and Gabel's coach at the time of the alleged abuse, had no personal knowledge that Gabel had engaged in any inappropriate sexual relationships with minors until more than 10 years later." *See id.* (citing [Dkt. No. 251-4] SUMF ¶ 271).  Moreover, according to Defendant USS, Plaintiff "confirmed that she did not tell anyone about Gabel's alleged abuse until several years later." *See id.* (citing [Dkt. No. 251-4] SUMF ¶ 83).

Furthermore, Defendant USS asserts that it "did not have care, custody, or control over Farrell or Gabel at the time when the alleged abuse occurred." *See* Dkt. No. 251-3, USS's Memorandum of Law, at 15.  Defendant USS argues that "[t]he majority of the alleged abuse occurred while Farrell was with Gabel outside of training at private locations when Farrell was clearly outside of the 'orbit' [and] was not engaged in any event associated with speedskating[.]" *See id.*; *see also* Dkt. No. 251-4, SUMF ¶ 19.

With regard to the alleged abuse that occurred at the Lake Placid OTC and weekend training sessions and the 1998 Olympic trials occurred offsite or on Plaintiff's own time when she was not being supervised by Defendant USS.  *See* Dkt. No. 251-3, Defendant USS's Memorandum of Law, at 16 (citing [Dkt. No. 251-4] SUMF ¶¶ 19, 76, 449, 283, 450).

Furthermore, Defendant USS argues that it "did not owe a duty to protect Farrell because there was no agency or employment relationship between Gabel and USS at the time of the alleged abuse." *See* Dkt. No. 251-3, Defendant USS's Memorandum of Law, at 17.  Defendant USS argues that "[t]he record confirms that Gabel was training as a fellow speedskater on his own volition at Saratoga Winter Club in 1997, and that he was not a coach." *See id.* at 18.

Defendant USS also argues that the record demonstrates that "Gabel had no actual or implied authority to make decisions on defendant USS' behalf during any relevant time period."  *See id.*

In response to Defendant USS's arguments, Plaintiff contends that Defendant USS owed her a duty "because it (1) had a relationship with [her] that required USS to protect her from the conduct of others, and (2) had a relationship with Gabel that encompassed the control of his actions.  *See* Dkt. No. 315, Plaintiff's Opposition Memorandum, at 10-11.

Furthermore, Plaintiff argues that, because Defendant Gabel was intimately involved with Defendant USS in several capacities, and because Defendant Gabel enjoyed a status of admiration and respect among fellow speedskaters and member of Defendant USS, this imposed a duty on Defendant USS to prevent Defendant Gabel from harming young athletes.  *See id.* at 15-18.

In addition, Plaintiff contends that Defendant "USS was on notice of Gabel's predatory sexual behavior as early as 1990 because evidence suggests that USS knew Gabel had been investigated for engaging in a sexual relationship with a fifteen-year-old speedskater (identified as Victim #2 in the Complaint) at the NMU OTC (the 'NMU Investigation')."  *See id.* at 20. Plaintiff also claims that Defendant USS would have been aware of Defendant Gabel's propensity to abuse minors because, following his abuse of Victim #3, who "testified that multiple USS employees were 'very aware' of her relationship with Gabel and 'did nothing about it.'"  *See id.* at 22 (quoting [Dkt. 252-33 (Victim #3 Deposition)] at 120:2-25).  Finally, Plaintiff argues that Defendant Gabel had a reputation among fellow athletes and trainers for behaving inappropriately with underage girls.  *See id.* at 23-25.

It is abundantly clear from the Court's review of the record that there are many genuine issues of material fact as to the extent to which, if any, Defendant USOPC and/or Defendant USS

owed a duty to Plaintiff to protect her from the abuse she allegedly suffered at the hands of Defendant Gabel, whether either or both of them breached that duty, and whether any such breach was a substantial cause of her resulting injury. Therefore, the Court denies Defendant USOPC's and Defendant USS's motions for summary judgment regarding Plaintiff's negligence claim.

**D.      Plaintiff's negligent infliction of emotional distress claim**

To state a claim for negligent infliction of emotional distress, a plaintiff must establish "a breach of duty owed to [her], which either unreasonably endangers [her] physical safety, or causes [her] to fear for her own safety[.]" *Monaghan v. Roman Catholic Diocese of Rockville Ctr.*, 2015 N.Y. Misc. LEXIS 5265, *9-*10 (Sup. Ct., Nassau County, 2015) (citing *Ferreyr v. Soros*, 116 A.D.3d 407, 984 N.Y.S.2d 296 [1st Dept. 2014]; *Bernstein v. East 51' St. Dev. Co., LLC*, 78 A.D.3d 590, 914 N.Y.S.2d 3 [1st Dept. 2010]).

A Court should dismiss a claim for negligent infliction of emotional distress when the "conduct complained of . . . falls entirely within the scope of plaintiff's separate causes of action for negligence, negligent supervision and negligent retention." *Fay v. Troy City Sch. Dist.*, 197 A.D.3d 1423, 1424 (3d Dep't 2021) (citing *Steven B. v. Westchester Day Sch.*, 196 A.D.3d 624, 625, 148 N.Y.S.3d 384 [2021]). In this case, the conduct about which Plaintiff complains -- Defendant USOPC's and Defendant USS's failure to protect her from Defendant Gabel's alleged abuse falls squarely within the scope of her cause of action for negligence. Accordingly the Court grants Defendant USOPC's and Defendant USS's motions for summary judgment with regard to Plaintiff's negligent infliction of emotional distress claim.

**E.        Plaintiff's intentional infliction of emotional distress claim**

"The claim of intentional infliction of emotional distress . . . is made out by extreme and

outrageous conduct, with an intent to cause, or disregard of a substantial probability of causing,

severe emotional distress, causing such several emotional distress." *Batbrothers LLC v.*

*Paushok*, 60 Misc. 3d 1205(A), 109 N.Y.S.3d 837 (Sup. Ct., N.Y. Cnty., 2018), *aff'd*, 172 A.D.3d

529, 101 N.Y.S.3d 297 (2019) (citing *Howell v. New York Post Co.*, 81 NY2d 115 (1993)).  "The

subject conduct must be '"so outrageous in character, and so extreme in degree as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community[.]"'"  *Klein v. Metropo. Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dep't

2012) (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 [1983] (quoting

Restatement [Second] of Torts § 46, Comment d)) (other citation omitted).

In this case, Plaintiff does not allege that either Defendant USOPC or Defendant USS

engaged in any extreme or outrageous conduct with the intent to cause her harm.  *See generally*

Dkt. No. 2, Complaint.  Therefore, the Court grants Defendants USOPC's and USS's motions for

summary judgment with regard to Plaintiff's intentional infliction of emotional distress claim.

**F.        Defendant USOPC's motion for summary judgment regarding Defendant USS and
           Defendant SWC's cross-claims against it**

Defendant USOPC moves for summary judgment with regard to Defendant USS and

Defendant SWC's cross-claims for indemnification and contribution against it.  *See* Dkt. No.

247-90, Defendant USOPC's Memorandum of Law, at 30; *see also* Dkt. No. 25, Defendant

SWC's Answer, ¶ 135 (Cross-claim for indemnification and contribution pursuant to contract or

common law against all co-Defendants); Dkt. No. 58, Defendant USS's Answer, ¶ 133 (Cross-

claim for indemnification and contribution pursuant to contract or common law against all co-Defendants).

Defendant USOPC notes that Defendants "USS and SWC did not oppose [its] motion for summary judgment on their cross-claims, and the record does not establish any of the elements for indemnification or contribution." *See* Dkt. No. 324-5, Defendant USOPC's Reply, at 20 (citing [Dkt. No. 247-90] Mot. at 24-25).

In light of the fact that Defendants USS and SWC did not file any opposition to Defendant USOPC's motion for summary judgment with regard to their cross-claims for indemnification and contribution, the Court concludes that they have abandoned those cross-claims.  Therefore, the Court grants Defendant USOPC's motion for summary judgment with regard to the cross-claims that Defendants USS and SWC asserted against it.

### IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant USOPC's motion for summary judgment, *see* Dkt. No. 247, and Defendant USS's motion for summary judgment, *see* Dkt. No. 251, with regard to Plaintiff's claim for negligence are **DENIED**; and the Court further

**ORDERS** that Defendant USOPC's motion for summary judgment, *see* Dkt. No. 247, and Defendant USS's motion for summary judgment, *see* Dkt. No. 251, with regard to Plaintiff's claim for negligent infliction of emotional distress are **GRANTED**; and the Court further

ORDERS that Defendant USOPC's motion for summary judgment, *see* Dkt. No. 247, and Defendant USS's motion for summary judgment, *see* Dkt. No. 251, with regard to Plaintiff's claim for intentional infliction of emotional distress are **GRANTED**; and the Court further

ORDERS that Defendant USOPC's motion for summary judgment, *see* Dkt. No. 247, with regard to Defendant USS's and Defendant SWC's cross-claims for indemnification and contribution is **GRANTED**; and the Court further

ORDERS that Plaintiff's motion to strike the Declaration of Lindsey Barnhart, *see* Dkt. No. 337, and her motion for leave to file a reply in further support of her motion to strike the Declaration of Lindsey Barnhart, *see* Dkt. No. 345, are **DENIED**; and the Court further

ORDERS that Defendant USOPC's motion for leave to file a reply brief in further support of its procedural and evidentiary objections to Plaintiff's Response to its Statement of Material Facts, *see* Dkt. No. 343, is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 7, 2026
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 21 -